J. V., Appellant,

v.

STATE of Oklahoma, DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES, and L. E. Rader, Director of the Department of Institutions, Social and Rehabilitative Services, Appellees.

In the Matter of L. M. H., a child under 18 years of age, to-wit: 7 years.

No. 48897.

Supreme Court of Oklahoma.

Nov. 22, 1977.

Rehearing Denied Jan. 19, 1978.

Charles R. Hogshead, Tulsa, for appellant.

Donald Lee Ritter, Oklahoma City, for Dept. of Institutions etc., for appellees.

BERRY, Justice.

District court entered an order terminating parental rights under 10 O.S.Supp.1975 § 1130 [now cited as: 10 O.S.Supp.1976 § 1130].[1] Child, with regard to whom rights were terminated, had previously been finally adjudged dependent and neglected under the provisions of 10 O.S.1971 § 1101 et seq., as amended [herein styled juvenile code.]

Appellant's first assignment of error is failure of the district court to grant a trial by jury on the issue of termination of parental rights [hereinafter: "termination"].

■ Under this assignment appellant's first proposition argues the right of a parent to the companionship, care, custody and management of the child is a fundamental right protected by the United States Constitution and the Oklahoma Constitution. Appellant cites ample authority for the proposition and we are in accord with this view. *Bishop v. Benear,* 132 Okl. 116, 270 P. 569; *Alford v. Thomas,* Okl., 316 P.2d 188 at 192.

■ Appellant concedes there is no present federal constitutional imperative requiring juries in cases of this nature. Rather, appellant urges due process and equal protection require this Court to interpret the Oklahoma Constitution and statutes as providing trial by jury on the issue of termination. Appellant says ". . . (S)ince substantial rights of the parent hang in the balance, the full gamut of procedural safeguards guaranteed by the United States Constitution and the Oklahoma Constitution must be accorded to the parent-litigant before these rights may be terminated by the State. One such safeguard is right to jury trial."

Appellant cites us to no authority for the conclusion. We will not, absent authority, engraft the right to jury in termination cases upon the constitution and law of this State merely on the reasoning that because substantial rights are affected a jury is required.

Appellant, in the second proposition, maintains there is a present right to jury in termination matters under the Oklahoma Constitution. This is an issue of paramount significance in this appeal as the result of our determination will govern the conduct of the new trial in district court.

The Oklahoma Constitution, at Art. II § 19, provides:

"The right of trial by jury shall be and remain inviolate . . ."

Appellant argues this language, when construed in light of *Salter v. State,* 2 Okl.Cr. 464, 102 P. 719,[2] mandates a trial by jury in termination cases.

Appellant fails to consider the line of cases holding that the right to jury secured by the Oklahoma Constitution is limited to those cases in which the right existed either at common law or in federal court just prior to statehood.

In *Maryland National Insurance Co. v. District Court,* Okl., 455 P.2d 690, we upheld the constitutionality of statutes providing for enforcement of liability in bail bond forfeiture proceedings, by trial without jury, and said:

"In the briefs, petitioners argue that the new statute unconstitutionally denied them the right to a jury trial, and violates due process and equal protection clauses of both state and federal constitutions.

"We first consider the question of petitioners' right to a jury trial. In . . . *Keeter v. State ex rel. Saye,* 82 Okl. 89, 198 P. 866, 17 A.L.R. 557, this court gave exhaustive consideration to the question of the jury trial guarantees of our own Constitution, in the face of prior holdings not in harmony, and held:

1. Citations to Title 10, Oklahoma Statutes, will be to the latest edition wherein the cited statute appears unless the latest statute is materially different from the statute applied by the trial court, in which case the cite will be to the statute used by the trial court.

2. "In the Constitution of Oklahoma the utmost pains have been taken to preserve all of the securities of individual liberty, and all provisions of the Constitution designed to safeguard the liberty and security of the citizen should be liberally construed by the Courts." (first syllabus)

'The right to trial by jury, declared inviolate by section 19, art. 2, of the Constitution of Oklahoma, except as modified by the Constitution itself, has reference to the right as it existed in the territories at the time of the adoption of this Constitution, and the right to a jury trial therein referred to was not predicated upon the statutes existing in territories at that time, but the right as guaranteed under the federal constitution and according to the course of the common law.' "

We are not persuaded the right to jury trial has assumed a different character since we decided *Maryland National,* supra. Appellant has cited us no authority for the position that termination actions were accorded trial by jury at the common law. Appellant concedes terminations do not demand jury trial by virtue of the federal constitutional imperative. Absent authority or constitutional command we will not say trial by jury is required by the Oklahoma Constitution in termination proceedings.

To determine if there is a statutory entitlement to a jury on the issue of termination we must examine the provisions of the juvenile code. 10 O.S.1971 § 1110 provides:

"In hearings to determine *whether a child is within the purview of this Act,* the child informed against, or any person interested in such child, shall have the right to demand a trial by jury, which shall be granted as in other cases, unless waived, or the judge on his own motion may call a jury to try any such case. Such jury shall consist of six (6) persons." (Italics added)

Juries are not provided for in every hearing under the juvenile code. It is only where the purpose of the hearing is to "determine whether the child is within the purview" of the code that a jury may be demanded.

The juvenile code provides for a comprehensive method of dealing with children who, in the view of the legislature, need special attention. The code provides for distinct types of hearings the character of which varies as the object of the hearing varies. Initially [10 O.S.Supp.1976 § 1103]

there is a determination by the court, on information of a citizen, whether a juvenile petition ought be filed. If a petition is filed, there is then [10 O.S.1971 § 1104; 10 O.S.Supp.1976 § 1107] a summary determination of custody pendente lite.

Only after the first of these hearings, and the second in cases were necessary, and pre-trial proceedings, does the court proceed to the [10 O.S.Supp.1976 §§ 1101(f), and 1111] adjudicatory hearing in dependency cases. The function of the adjudicatory hearing is to determine whether the allegations of the § 1103 petition are true, and whether the child should be made a ward of the court [10 O.S.Supp.1976 § 1101(f)]. It is at this hearing, for these purposes, that a jury may be demanded [10 O.S.1971 § 1110].

After a child is determined to be within the purview of the juvenile code [i. e. adjudged dependent in the context of this appeal] the court proceeds to determine what disposition ought be made of the child in accordance with 10 O.S.1971 § 1116 et seq. The court is guided in the conduct of dispositional hearings [10 O.S.Supp.1976 § 1101(g)] by the provisions of 10 O.S.1971 § 1115.

Prior to the enactment of 10 O.S.Supp. 1965 § 471 et seq. [now 10 O.S.1971 § 1130 et seq.] award of custody to a third person with power to consent to adoption was a dispositional alternative extended to the juvenile judge. Since the enactment of the statutes the court is required to conduct a separate hearing on the question of termination. The hearing to determine whether child is within the purview of the Act does not fully protect the parent's right to a day in court on the issue of termination of parental rights. The present procedure is to further extend the parent's right of due process over the prior procedure.

The termination statutes operate upon the parent's right to the care, custody and control of the child and [to the extent material in this appeal] may operate only after a decision that the child's right to proper nurture has been infringed, however innocently, by some act of omission or commission by the parent.

A hearing on the question of termination of parental rights, then, is not a hearing to determine whether the child is within the purview of the juvenile code. The legislature has authorized the use of a jury in cases under the code only in those hearings to determine whether the child is within the purview of the code. Logic leads us to conclude the legislature has not provided for a jury as part of termination proceedings.

■ Appellant urges us to adopt the position that the juvenile code violates the Oklahoma Constitution by failing to provide a jury in the instant circumstances. We decline to do so. Since the Oklahoma Constitution does not require a jury in termination matters there is no constitutional infirmity in a statute which, while providing for a jury in some juvenile hearings, fails to provide a jury in termination proceedings.

■ Appellant's third proposition is a jury is required in order to maintain the appearance as well as the actuality of fairness in termination proceedings. Rather than a general proposition on this point appellant ties the argument rather specifically to the unusual facts in this case. The record reveals the referee who conducted the first termination hearing [which resulted in the later vacated termination order] is the same person who was petitioner when the dependency and neglect petition was filed some six years earlier. The second termination hearing, from which this appeal is taken, was conducted after the trial court sustained this appellant's motion to vacate the order which resulted from the first hearing. The second hearing was conducted by the judge without reference. No objection was made in the trial court which would preserve the issue for appeal. We deem the issue moot.

Appellant's fourth proposition is waiver of jury at the adjudicatory stage of juvenile proceedings ought not operate as a waiver of jury at the termination stage. Appellant has shown no logic nor authority to convince us that once a jury is waived, it can later as a matter of right be demanded. In light of the foregoing discussion of right to jury in termination proceedings further consideration is not necessary.

■ Appellant's second specification of error is that evidence is insufficient to support the trial court's judgment terminating appellant's parental rights.

We observe that at the time of first hearing of termination appellant was in a mental hospital. Even though appellant's whereabouts were known to appellees appellant was not notified. Subsequently appellant was released from the institution, was responding to prescribed medication, established residence with an aunt, and was preparing for the proper care of the child.

On motion by appellant trial judge set aside the termination order and reset the matter. At this time appellant demanded a jury trial.

At the hearing that ensued the record indicates a vigorous effort was made by appellant's attorney to obtain a jury. The merits of proceedings appear obscured.

Even though the record shows that the trial judge had deep concern for the welfare of the child, we reverse and remand with directions to rehear and determine whether appellant has corrected conditions alleged in motion to terminate and whether it is in the best interest of the child to terminate parental rights.

The only issues decided in this opinion are the issue of right to trial by jury in termination cases and the issue of sufficiency of the evidence in this case. We affirm trial court's denial of jury trial; we reverse on the evidentiary issue and remand for new trial not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded for further proceedings.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN and BARNES, JJ., concur.

WILLIAMS, SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting.

I must respectfully dissent to the majority opinion for the following definitive reasons:

I. This termination proceeding against appellant was not pled, tried or decided in compliance with our mandatory statutory provisions.
   A. The "motion" to terminate appellant's rights did not vest the court with jurisdiction to enter the termination order.
   B. There was no finding by the trial court that appellant came within any of the grounds statutorily specified for termination of parental rights.

II. The record is devoid of any evidence which supports the trial court's order terminating appellant's parental rights.

III. Illness, of either physical or mental origin, without more, is not a ground for involuntary termination of parental rights.

IV. Appellant was entitled to a trial by jury in the matter of termination of her parental rights.

V. The court should have appointed counsel to represent this child and her interests.

While Propositions I and V are not specifically asserted in appellant's brief, they are patent on the face of the record and raise questions of fundamental constitutional guarantees of due process of law. Therefore, they cannot be ignored.

First, however, the facts forming the basis of this action must be set out more fully.

J. V., appellant herein, gave birth to her daughter, Lisa H., on September 18, 1967. On April 14, 1969 a verified petition was filed in the District Court of Tulsa County, alleging that Lisa was a dependent and neglected child, praying that she be made a ward of the court and that her temporary custody be placed with the appellee Department [1]. Termination of parental rights was *not* sought in the petition. On June 4, 1969,

hearing on the petition was held and Lisa was adjudicated a dependent and neglected child, she was made a ward of the court, and her temporary custody placed with the Department.

On May 22, 1970, original petitioner filed a motion for return of Lisa's custody to her natural parents, alleging that subsequent to the court's order of June 4, 1969, which adjudicated Lisa a dependent and neglected child, the natural parents had *"corrected certain conditions that were previously detrimental to the well being of Lisa."* Hearing on the motion was held that date. The court found that the allegations of the motion were *true,* that it would be in Lisa's best interests to be returned to the care and custody of her natural parents and the court entered its order restoring custody of Lisa to her parents, under supervision of the Department. Appellant, J. V., continued to have custody of the child until February of 1974. At that time, appellant began having mental health problems and Lisa's custody was placed with an aunt. In early 1975, the aunt had difficulties with the child, and her custody was temporarily returned to the Department. During this period of time, beginning in February, 1975, appellant was hospitalized in Eastern State Hospital for treatment of her mental health problems.

On May 19, 1975, a Motion to Terminate the parental rights of Lisa's natural parents was filed. It alleged the following:

"Lisa is a child 7 years of age, declared and adjudged to be dependent-neglected on 6/4/69; that [her] natural father and mother . . . after at least six (6) months since the adjudication of said child, have failed to show that the conditions which resulted in the dependency-neglect of said children (sic) have been corrected.

"THAT the natural parents of said child have abandoned her for at least one (1) year prior to the filing of this motion; that said parents have failed to visit [her] . . . and have not kept the Welfare

1. Department of Institutions, Social and Rehabilitative Services (DISRS).

Department informed of their whereabouts. Neither parent has contributed anything toward [her] support during the past year.

"THAT permanent termination of the parental custody of said child is necessary to protect her physical and mental health."

Movant prayed that the parental rights of Lisa's natural parents be terminated, that she be placed in the permanent care and custody of the Department, that the Department have the right to consent to her adoption and that the matter be set for hearing.

Notice of the hearing was given to both parents only by publication. In June, 1975, a hearing was held at which neither parent appeared and the parental rights of both parents were ordered terminated by the court. Subsequently, J. V. filed a motion to vacate that order alleging that notice by publication was not adequate; that the court had no jurisdiction to terminate her parental rights as she had been a patient in Eastern State Hospital at the time and that with the exercise of due diligence, she could have been personally served.

Hearing on her motion to vacate was held. The court found that J. V. was not properly served, vacated its previous order terminating her [2] parental rights and set the matter for subsequent hearing.

An application for jury trial was filed in the action and on August 21, 1975, hearing was had upon the State's "Motion" to terminate J. V.'s parental rights. J. V. appeared and was represented by counsel. The state was represented by counsel. Her application for jury trial was denied. Witnesses were sworn and testimony given. The court held adverse to appellant and entered its order terminating her parental rights.

### PROPOSITIONS I through III

There is no statutory authority for an unverified "motion" to terminate parental rights. Termination proceedings are *required* by statute to be instituted upon a *verified petition*. 10 O.S.1971, § 1103, provides in pertinent part that:

"(a) Whenever any person informs the court that a child is within the purview of this act, the court shall make a preliminary hearing to determine whether the interests of the public or of the child require that further action be taken. Thereupon, the court may make such informal adjustment as is practicable without a petition, or may authorize a petition to be filed by any person. The proceeding shall be entitled, "In the matter of ———, a child under ——— years of age."

"(b) The *petition* shall be *verified* and may be upon information and belief. It shall set forth (1) with particularity facts *which bring the child within the purview of this act;* (2) the name, age and residence of the child; (3) the names and residences of his parents; the name and residence of his legal guardian, if there be one; (5) *the name and residence of the person or persons having custody or control of the child;* (6) the name and residence of the nearest known relative, if no parent or guardian can be found; (7) the relief requested. *If a termination of parental rights is desired, it must be stated in the petition and summons.* If any of the facts herein required are not known by the petitioner, the petition shall so state." (emphasis added)

The statutory provisions of our Juvenile Code pertaining to jurisdiction, notice, and hearing are mandatory. *Lone Wolf v. State Dept. of Inst. Soc. & Rehab. Serv.*, Okl., 470 P.2d 1014 (1970). There was no verified petition here that alleged facts upon proof of which the court could determine that the parental rights of appellant should be terminated.

In an identical situation which, interestingly, arose from the same district court

---

2. Insofar as it pertained to Lisa's natural father, the termination order was not vacated. He is not a party to this appeal.

wherein movant in the instant matter had filed another unverified "motion" to terminate parental rights, our Court of Appeals held the termination order entered therein by the court was null and void. *Matter of Edmunds,* Okl.App., 560 P.2d 243 (1977).

Explaining the jurisdictional nature of these statutory requirements, the Court of Criminal Appeals, in *Ex parte Lewis,* 85 Okl.Cr. 322, 188 P.2d 367 (1948) stated:

" * * * What are the elements of jurisdiction under the Juvenile Act? Under this Act, as in other cases, the right of the court to proceed to determine the issues therein involved is dependent upon competent jurisdiction. The elements of competent jurisdiction are: (1) Jurisdiction of the subject matter; (2) Jurisdiction of the person; and (3) The point to be decided must be within the court's power, as defined by the statutes, and raised by the pleadings. All the foregoing elements must exist by virtue of the definitions contained in the statutes since the procedure is purely statutory, and the juvenile court is one of special and limited jurisdiction. *Ex parte Parnell,* 19 Okl.Cr. 273, 200 P. 456. All the rights under the Juvenile Act, for the benefit of the juvenile, must be secured to him in the manner therein provided.

" * * * How does the court acquire jurisdiction? The manner in which the court can acquire jurisdiction of a juvenile delinquent, as found under the provisions of the Juvenile Act, is contained in Title 10, O.S.A. [1941] § 105, wherein the statute provides as follows: 'Any reputable person being a resident of the county having knowledge of a child in his county who appears to be either neglected, dependent or delinquent, may file with the clerk of court having jurisdiction in the matter, a petition in writing, setting forth facts *verified* by affidavits. The petition shall set forth the name and residence of the legal guardian, if known, or if not known then the name and residence of near relative, if there be one and

his residence known. It shall be sufficient that the affidavit is upon information and belief. R.L.1910, § 4416.'

" * * * *

"[T]he court acquires jurisdiction of the subject matter only by provisions of the statute, Title 10 O.S.A. § 101, as amended; by the filing of the petition, Title 10, O.S.A. § 105; pleading the necessary facts such as the age of the juvenile and his delinquency, either by reason of the commission of crime or by reason of any of the other grounds set out in the provisions of the statute. This is made necessary because of the fact that the juvenile court, in juvenile cases, *exercises special and limited jurisdiction and facts necessary to confer jurisdiction must be pleaded.* Sufficient facts must be alleged to confer jurisdiction, 43 C.J.S. Infants § 99, subsection d., note 86, *and said facts must be verified.* Title 10, O.S.A. § 105 [10 O.S.1971, § 1103]" (emphasis added) at 379, 389.

See, also: *Ex Parte Norris,* Okl.Cr., 268 P.2d 302 (1954).

Judgments or orders made by a court without the power to render same are void, unenforceable and subject to collateral attack. *Roth v. Union Nat. Bank,* 58 Okl. 604, 160 P. 505 (1916); *Cassina v. Jones,* Okl., 340 P.2d 482 (1959).

Here, as in *Lone Wolf, supra, and Edmunds, supra,* the failure to comply with the mandatory statutory provisions deprived the court of jurisdiction to enter the purported order.

The matter of the unverified Motion to terminate should, by itself, be determinative of this appeal.

Setting aside the question of the legality of the motion itself, as I must for purposes of this dissent, the substance of this motion must be examined in light of the statutory conditions which will support a termination order. Our statutory specifications for termination are of course, by constitutional necessity, both mandatory and exclusive.

**1290**

Termination of parental rights may be ordered, if at all, only upon a finding that certain conditions set forth in 10 O.S.Supp. 1976, § 1130 exist at the time of the hearing. The statute provides:

"A. The finding that a child is delinquent, or mistreated or neglected, shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

1. Upon a written consent of a parent, including a parent who is a minor, acknowledged as provided in 10 O.S. 1961, Section 60.5(5), who desires to terminate his parental rights; or

2. A finding that a parent who is entitled to custody of the child has abandoned it for one (1) year; or

3. A finding that a parent who is entitled to custody of the child:

a. has failed to give the child the parental care or protection necessary for his physical or mental health, or

b. although financially able, has willfully neglected to provide the child with the necessary support or education, or

c. is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child or children; or

4. A finding that a parent, having been ordered to contribute to the support of the child, has willfully failed to contribute during the preceding year.

5. A finding that a parent has physically abused a child subsequent to having been found guilty of child beating or child abuse either in a criminal action or specifically so found in a child dependency neglect action in a proceeding in the juvenile division of a district court.

\* \* \* "

It is obvious from reading the motion that movant has alleged therein only one statutory ground for terminating appellant's parental rights: "abandonment for at least one (1) year prior to the filing of this motion." § 1130(A)(2).

The motion sets out an allegation pertaining to the parents' failure "after at least six (6) months since the adjudication . . . to show that the conditions which resulted in the dependency-neglect have been corrected", and this, at first glance, would seem to be statutory language from § 1130(A)(3)(c). (Particularly if the misstatement of the statute's specification of the time period as *"within"* six months after the adjudication is overlooked) A closer look, however, shows that this part of the motion has no connection with § 1130(A)(3) for there is no allegation that: appellant failed to give Lisa the parental care necessary for her physical or mental health. (§ 1130(A)(3)(a)); or that appellant, although financially able, willfully neglected to provide Lisa with the necessary support or education (§ 1130(A)(3)(b)); or that appellant is unfit by reason of debauchery or any of the other specified conduct of § 1130(A)(3)(c), which would be detrimental to the physical or mental health or morals of Lisa.

The allegation that neither parent "contributed anything toward the support" of Lisa "during the past year" is not sufficient to place the cause within the contemplation of the statute. This statement does not

come within the terms of § 1130(A)(3)(b) that appellant was *financially able* to provide necessary support or education but willfully neglected to do so; nor does it come within § 1130(A)(4) because nowhere is it alleged that appellant was *under an order* to contribute but willfully failed to do so. The allegations that appellant failed to visit the child and did not inform the Department of her whereabouts, even if true, do not constitute statutory grounds for termination of parental rights.

The pleading filed gave appellant notice that the State believed she had abandoned Lisa for a period of one year prior to May 19, 1975, and that the State intended to prove that abandonment and terminate her parental rights by reason of it.[3]

The burden of proving the issue was, of course, on petitioner, the State. See, e. g., *Application of Gault, supra; Alsager v. District Court of Polk County, Iowa, supra: In Interest of Hochmuth,* Iowa, 251 N.W.2d 484 (1976); *In re J.V.,* N.D., 185 N.W.2d 487 (1971); *In re Sego,* 82 Wash.2d 736, 513 P.2d 837 (1973); *In re Welfare of Larson,* Minn., 251 N.W.2d 325 (1977).

The State did not meet its burden of showing that appellant had abandoned Lisa for one year. In this regard, I must disagree with the majority's observation that the "merits" of this proceeding "appear obscured". In my opinion the "merits" of this proceeding are simply non-existent. There was no evidence to support the court's order terminating appellant's parental rights. There was no showing that appellant had abandoned Lisa for any period of time, let alone for one year.

In support of its motion to terminate, the State called only one witness, a social worker who had been assigned to the case for a period of four months prior to the hearing.

Her testimony showed the following which is pertinent to this appeal.

While Lisa lived with her mother from 1970 through February of 1974 she was a "normal child" who exhibited no emotional problems. In 1974, appellant was "in and out of hospitals" for psychiatric treatment. In February, 1974, as a result of a meeting between appellant and another social worker, Lisa's custody was placed in Texas with her aunt. Lisa was returned to Oklahoma in April of 1975 because the aunt felt that they couldn't control her because she was, in the aunt's opinion, suffering from an emotional problem. The worker testified that after the child's return to Oklahoma, however, she appeared to be normal and no behavior problems at all were observed. Lisa was then placed in foster care.

She stated that neither the Department nor Lisa's aunt received any money from appellant for Lisa's support. She testified that while Lisa was staying with her aunt, the appellant did not call the Department in regard to visiting with Lisa or write to Lisa in care of the Department.

She testified that in February, 1975, appellant called a Juvenile Bureau worker to inquire about Lisa and say that she wanted Lisa home with her. Later, in either April or May, appellant sent word to the witness through a friend that she was home from Eastern State Hospital on leave and wanted to see her daughter. In response to that call the witness and another social worker went to see the appellant and advised her that the Department was going to recommend that the court terminate her parental rights. The worker related that this news made appellant very upset and that she wept and told them "this just can't be done", whereupon they advised her of her right to counsel.

The witness also testified that Lisa does very well in school and has no problems with other children.

**3.** Fundamental due process requirements would certainly prohibit the state from alleging one ground for termination and then attempting to terminate upon a ground as to which notice was not given. *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In Interest of Robbins,* Iowa, 230 N.W.2d 489 (1975); *Alsager v. District Court of Polk County,* Iowa, 406 F.Supp. 10 (S.D.Iowa 1975), aff'd 545 F.2d 1137 (8th Cir. 1976); *York v. Halley,* Okl., 534 P.2d 363 (1975); *Matter of D.S.H.,* Okl.Cr., 549 P.2d 826 (1976).

In presenting appellant's demurrer to this evidence, her counsel stated "[t]he only thing that's been proven as to our client is that she was obtaining help for mental health problems. She was hospitalized for mental health problems and that's not a basis for terminating parental rights."

Her counsel was, I believe, correct in both his summarization of the evidence against appellant and his analysis of the law.

Viewed in its strongest possible light, the State's evidence showed only that appellant had been temporarily incapacitated while she was hospitalized for treatment of mental illness from February, 1974 through July 7, 1975.

We do not have a situation before us which involves a permanent or indefinite, but predictably lengthy, incapacitation. We certainly have no clear and convincing expert prognostic evidence that appellant would not, at any time in the foreseeable future, be able to provide parental care and control because of her condition. No testimony, expert or otherwise, was presented as to the kind of "condition" from which appellant was suffering. Additionally, at the time of this hearing appellant had been released from the hospital and she was seeking and preparing for the return of custody of her daughter. Neither are we concerned here with a situation where the appellant had harmed or neglected her daughter by reason of instability resulting from her "condition." In 1974 when the appellant recognized that she was in need of assistance because of mental health problems, she sought and obtained a custody placement for Lisa where she would be taken care of while appellant was unable to provide for her. Surely this is mature behavior for which appellant should be commended, not punished.

I am not aware of any authority which authorizes holding that a parent's temporary incapacity which results from illness, whether mental or physical origin, without more, constitutes abandonment for purposes of involuntary termination of parental rights. See, Annot. What Constitutes Abandonment or Desertion of Child by its Parent or Parents Within Purview of Adoption Laws. 35 ALR2d 662.

It is certainly true that our Juvenile Code provides for assumption of jurisdiction over a child whose parent is for any reason incapacitated and unable to provide support and care for the child.[4] In such an instance our juvenile courts are able to place custody of the child with another to aid the child and his family during their time of misfortune. Without question it is a legitimate function of the State of Oklahoma to insure custody, care and support of children when their parent is ill or otherwise incapacitated. The district court here was fully authorized to place temporary custody of Lisa with her aunt and then the Department while appellant was hospitalized. But we are not concerned with mere *custody* placement on this appeal.

Custody is but a temporary disposition which may always be modified upon a change of circumstances.

Here, the court permanently and irrevocably terminated all of appellant's rights in, and to, her daughter because of her temporary incapacity. It is not a legitimate function of the State of Oklahoma to sever the legal and natural relationship between parent and child because the parent is ill and temporarily incapacitated. Our termination statute, § 1130, does not authorize it.

I cannot agree with the majority that our statute permits termination where a child's right to proper nurture has been infringed, *however innocently*, by some act of omission or commission of the parent. In my opinion the grounds for termination set forth in § 1130 are based on *fault* attributable to the parent. If our statute does authorize termination because of a parent's

---

**4.** Pursuant to 10 O.S.Supp.1976 § 1101(d), a dependent or neglected child is one who "is without necessary care or support through no fault of his parents."

innocent acts (such as appellant's illness) then it is clearly unconstitutionally vague and we should so hold. *Alsager v. District Court of Polk County, Iowa, supra.*

Appellant testified that while Lisa was in her custody she was always well taken care of. She stated that she agreed to placing Lisa's custody with her aunt in 1974 because she thought that she was not capable of caring for her due to her physical and mental health problems, and that she had wanted to get those problems taken care of so that she could care for Lisa. Appellant stated that during Lisa's stay with her aunt, she sent her money and gifts, called her long distance, and wrote letters to her directly, without going through the Welfare Department. She believed herself to be "pretty well cured" of her mental health problems. She had been released from the hospital on July 7, 1975, and since then she had not had a seizure because of the medication she was taking and she was presently going to the out-patient clinic. Appellant expressed her desires to visit with, and be restored the custody of her daughter.

Appellant's great-aunt (not the same aunt in whom temporary custody of Lisa was placed in 1974) testified that appellant was presently living with her and that for the past several years she had observed appellant caring for Lisa. She stated she had never seen Lisa neglected by her mother or go without food, shelter or clothing.

The trial court ordered appellant's parental rights terminated and the order of the court recites only that:

"Based on the testimony and evidence presented the Court determines that the best interest of said child would be served by terminating the parental rights of the natural mother; therefore, the parental rights of the natural mother, * * *, in and to said child, are terminated and said child is placed into the permanent custody of the Oklahoma Department of Institutions, Social and Rehabilitative Services along with the right to plan for and consent to the adoption of said child."

While the best interests and welfare of a child are the ultimate purposes to be served by termination, the "best interests" of the child is not a ground for termination. Our Legislature has set forth in 10 O.S.1971, § 1130, the entirety of that behavior of a parent toward his child which will warrant the State's interference with the legal and natural relationship of parent and child. Unless and until a parent is shown by clear and convincing evidence to come within one of the specific statutory categories of a parent whose parental rights can and should be terminated, such an order may not issue. While the judiciary may restrict and narrow the categories of that statute,[5] it may not add further grounds for termination thereto.

Section 1130(A)(2) was pled as the ground for terminating appellant's parental rights; it requires:

"A finding that a parent who is entitled to custody of the child has abandoned it for one (1) year."

The State did not prove its case of abandonment. The court made no finding of abandonment. Appellant is correct that the evidence is insufficient to support the order of the court terminating her parental rights.

PROPOSITION IV

I cannot agree with the majority that our statutes and Constitution do not authorize trial by jury in termination actions.

Appellant asserts that her right to a trial by jury was guaranteed by the Oklahoma Constitution, Art. 2, § 19, and 10 O.S. 1971, § 1110.

Art. 2, § 19, as amended in 1969, provides in pertinent part that:

"*The right of trial by jury shall be and remain inviolate*, except in civil cases wherein the amount in controversy does

---

5. *Alsager v. District Court of Polk County, Iowa, supra.*

not exceed One Hundred Dollars ($100.00), or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Hundred Dollars ($100.00). Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts. *Juries for the trial of* civil and criminal cases shall consist of twelve (12) persons; but in the trial of misdemeanors, proceedings *for the violation of ordinances or* regulations of cities and towns, *juvenile proceedings,* actions for forcible entry and detainer, or detention only, of real property and collection of rents therefor, and civil cases concerning causes of action involving less than Twenty-Five Hundred Dollars ($2,500.00), juries *shall consist of six (6) persons.*" (emphasis added)

Title 10, O.S.1971, § 1110 provides that: "In hearings to determine whether a child is within the purview of this Act, the child informed against, or any person interested in such child, shall have the right to demand a trial by jury, which shall be granted as in other cases, unless waived, or the judge on his own motion may call a jury to try any such case. Such jury shall consist of six (6) persons."

The majority concludes that a hearing to determine whether or not a parent's right to his or her child should be terminated, is "not a hearing to determine whether the child is within the purview of the juvenile code." I disagree.

The juvenile code recognizes only two types of hearings: adjudicatory and dispositional. 10 O.S.Supp.1976, § 1101(f)(g).

Actions brought on behalf of, or against, a child, must originate with a verified petition (10 O.S.1971, § 1103), alleging, inter alia, the particular facts which bring the child "within the purview" of the Act. After issuance of summons (§ 1104), the first stage hearing, the adjudicatory hearing, must be held to "determine whether the allegation of [the] petition . . . are supported by the evidence and whether a

child should be adjudged to be a ward of the court." (§ 1101(e)). This hearing must be conducted according to the rules of evidence, witnesses must be sworn and are subject to cross-examination. (§ 1111).

The dispositional hearing need not be conducted under the rules of evidence, written and oral reports, to the extent of their probative value, may be admitted even though they would not be competent for an adjudication hearing. (§ 1115). See, *In Matter of Paul et al.,* Okl., 555 P.2d 603 (1976).

Termination of parental rights is not merely a "disposition" of an adjudicated child. It is a drastic measure that involves absolute and permanent termination of all a parent's natural and legal rights to his child. (§ 1132).

Termination must be sought by verified petition, alleging the particular facts which bring the child "within the purview" of the code. (§ 1103). This is true whether termination is requested in the original petition or, as in the instant case, it is sought subsequent to the adjudication, *Matter of Edmunds (Department of Institutions, Social and Rehabilitative Services v. Edmunds),* supra, and, notice to parents must be given. (§ 1131). Hearing must then be had to determine whether the allegations of that petition are supported by the evidence.

In that hearing the precise issue to be determined is whether or not a child is "within the purview of the juvenile code" for purposes of termination.

Purview is defined by Black's Law Dictionary, Fourth Edition, as:

"Enacting part of a statute, in contradistinction to the preamble . . . That part of a statute commencing with the words 'Be it enacted,' and continuing as far as the repealing clause; and hence, the design, contemplation, purpose, or scope of the act."

In the absence of findings which place a child within the purview of the Code for purposes of termination, the court has no

power to end the parent-child relationship. Not all circumstances which are sufficient to adjudicate a child as a ward of the court, are sufficient to terminate parental rights. Being a drastic remedy, termination is contemplated only for those extreme situations where no reasonable probability exists that the welfare of the child will be served by a continuation of the legal relationship of the child with his parents.

In my opinion, this determination of whether the conditions specified by § 1130 exist is an adjudicatory proceeding within the contemplation of 10 O.S.1971, § 1110. In this regard, see: *Matter of Moore*, Okl., 558 P.2d 371 (1976) wherein we held that a hearing on an "Amended Supplemental Petition" praying for termination, which was filed subsequent to the original adjudication, was an adjudicatory hearing.

While my decision is based upon statutory construction, constitutional considerations also cause me to reject the position that a termination hearing is only a dispositional hearing. The relaxed procedure which is sufficient for a dispositional hearing is constitutionally insufficient in a proceeding to terminate parental rights. We have recognized the extreme importance of the guarantees of due process where family relationships are threatened (*In re Wright*, Okl., 524 P.2d 790 (1974); *York v. Halley, supra; Pfotenhauer v. Hunter*, Okl., 536 P.2d 923 (1975)) and where the issue to be decided is the continuation of the legal relationship of parent and child, the issues are far too important to be decided in a hearing which need not be conducted under rules of evidence.

Appellant was entitled to a jury trial and the trial court's refusal to grant it was reversible error. Courts have a duty to enforce strict observance of the constitutional and statutory provisions designed to preserve inviolate the right to, and the purity of, the jury trial. *Jackson v. General Finance Corp.*, 208 Okl. 44, 253 P.2d 166 (1953); *Prince Hall Village Apts. v. Braddy*, Okl.App., 538 P.2d 603 (1975).

## PROPOSITION V

Finally, it is my opinion that the court erred in failing to appoint counsel to represent Lisa and her interests.

Our statutes plainly provide for appointment of counsel to represent children in any action before the court.[6] Where the possible outcome of the proceeding is termination of all legal and natural rights between a child and his parent, the matter is one of gravest concern to the child, as well as to the parent, and I believe the failure to appoint counsel for the child is fundamental error. See, *Price v. Price*, Okl., 573 P.2d 251 (1977); *Application of Gault, supra; Roe v. Conn*, 417 F.Supp. 769 (M.D.Ala. 1976); *People In Interest of M.B. v. J.B.*, 188 Colo., 370, 535 P.2d 192 (1975). *Matter of Fish*, Mont., 569 P.2d 924 (1977).

For the above and foregoing reasons, I respectfully Dissent. I would reverse the trial court with directions to set aside its order of termination and dismiss the motion to terminate.

I am authorized to state that Justices WILLIAMS and DOOLIN join in this Dissent.

---

6. 10 O.S.1971, § 24 provides: " * * * (a) When it appears to the court that the minor or his parent or guardian desires counsel but is indigent and cannot for that reason employ counsel, the court shall appoint counsel. In any case in which it appears to the court that there is such a conflict of interest between a parent or guardian and child that one attorney could not properly represent both, the court may appoint counsel, in addition to counsel already employed by a parent or guardian or appointed by the court to represent the minor or parent or guardian, * * *."

And, 10 O.S.1971, § 1109(b) provides: "If the child or his parents, guardian, or other legal custodian requests an attorney and is found to be without sufficient financial means, counsel shall be appointed by the court if the child is being proceeded against as a delinquent child, or a child in need of supervision, *or if termination of parental rights is a possible remedy*, provided that the court may appoint counsel without such request, if it deems representation by counsel necessary to protect the interest of the child or of other parties."