In the Matter of KEYES, Derrick, a child under 18 years of age, to-wit: 2½ years.

No. 49717.

Supreme Court of Oklahoma.

Dec. 20, 1977.

Rehearing Denied Feb. 8, 1978.

See also Okl., 574 P.2d 1035.

Charles Davis, Tulsa, for appellant Keyes.

James H. Chafin, Tulsa, for appellant Wesley.

Donald Lee Ritter, Dept. of Institutions, Social and Rehabilitative Services, Oklahoma City, for appellee State of Oklahoma.

BARNES, Justice:

This is an appeal by Appellant, Ann Keyes, from an order of the Trial Court terminating her parental rights and those of the natural father, Robert Wesley, to their child, Derrick Keyes, age two and one-half years at the time of the hearing. The natural father appeals in Case No. 49,-718, and the natural mother appeals in Case No. 49,717.

The pertinent facts are as follows: The child in question, Derrick Keyes, was living in the care and custody of his natural mother, Appellant Ann Keyes, with the concurrence of Robert Wesley, the child's natural father, who was a sometimes resident of the mother's home. On January 5, 1974, the child was admitted to Hillcrest Hospital in Tulsa, Oklahoma, with severe medical problems, including pneumonia, severe dehy-

dration, vomiting, hypernatremia, and severe anemia.

As a result of subsequent investigation, the State, through the Department of Institutions, Social and Rehabilitative Services (Department), filed a petition in the Tulsa County District Court alleging the aforementioned medical problems were the result of improper care by the child's mother. The child was made a ward of the Court pursuant to a temporary order, with custody in the Department, and later adjudicated a dependent and neglected child, with custody in the Department, pursuant to an order of May 17, 1974, setting a review date for July 17, 1974. Further hearings were held September 4, 1974, and January 8, 1975, at which time custody was continued in the Department.

On March 19, 1975, both parents again appeared before the Court and temporary custody was restored to the natural mother under the Department's supervision and review date set for September 17, 1975. On that date the matter was continued to permit the newly assigned caseworker to become acquainted with the case and to provide the Court with a written report. Hearing was reset for October 1, 1975.

However, on September 20, 1975, Appellant Ann Keyes left the child in Appellant Robert Wesley's care while she went shopping with Mrs. Wesley. Upon return, the child was passing blood in his stool, whereupon Appellants took the child to Oklahoma Osteopathic Hospital, in Tulsa, Oklahoma.

On September 23, 1975, a motion was filed asking that the parental rights of both Appellants be terminated, alleging conditions existing January 18, 1974, had not been shown to be corrected, that on September 20, 1975, Appellant Wesley had assaulted the child, and that permanent termination of parental rights was necessary to protect the physical and mental health and morals of the child.

Temporary custody was again placed in the Department by order of September 23, 1975. Hearings were held before Referee Helen Kannady in Tulsa County District Court, Juvenile and Family Relations Division, on the motion asking that parental rights be terminated. Appellants herein were represented by counsel. The Court Referee found, after hearing testimony and evidence, that the conditions that had existed had not changed, that the child's physical health continued to be in jeopardy, and that it was necessary for the proper care and protection of the child and in his best interests that all parental rights of the natural parents be terminated, and that the child be placed in permanent custody of the Department, with said Department to plan for and consent to the adoption of the child.

The matter came on for hearing before the Associate District Judge presiding over the Juvenile and Family Relations Division of the Court on April 15, 1976, at which time he entered an order stating the Appellants failed to show any prejudicial rights, to protect the child's physical and mental well-being.

Thereafter, Appellant and Robert Wesley filed their independent appeals before this Court seeking to vacate the Trial Court's judgment and urging that custody of the child be restored to both natural parents.

Appellant Keyes urges as error (1) that she was denied due process under 10 O.S. 1971, § 1130, which she contends is vague and overly broad; (2) that the Trial Court erred in overruling the demurrer to the State's evidence; and (3) that a termination of parental rights is not a permissible dispositional order, and that denial of trial by jury was violative of her constitutional and statutory rights.

Before considering Appellant's allegations of error, we deem it necessary to review the evidence. Medical expert testimony reflects a life-threatening injury to the child which, based upon the doctor's experience and examination of Derrick Keyes, would be consistent with anal abuse. However, medical testimony reveals cultures from specimens obtained in the hospital emergency room in search for sperm, acid phosphatase secretion, etc., were all negative.

A social worker with the Child Abuse Registry of the State Welfare Department testified she examined the child while in the hospital, observing small round sores on the back of one leg and upper arm and a looped scar on his leg. She further indicated no new injuries nor rectal or anal problems had occurred since the child's release from the hospital and while in foster care.

Appellant Keyes testified the child had been bleeding from the rectum before the September 20, 1975, incident and that she had taken him to Moton Health Center three or four times, where the doctor told her the bleeding could have resulted from the child's stool being hard, constipation, or something of that nature.

We will now consider Appellant's allegations of error. It is first contended that 10 O.S.1971, § 1130, is unconstitutionally vague on its face and has not been sufficiently narrowed by the case law of Oklahoma to cure such vagueness. That statute provides:

"A. The finding that a child is delinquent, or mistreated or neglected, shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

"1. Upon a written consent of a parent, including a parent who is a minor, acknowledged as provided in 10 O.S.1961, Section 60.5(5), who desires to terminate his parental rights; or

"2. A finding that a parent who is entitled to custody of the child has abandoned it for one (1) year; or

"3. A finding that a parent who is entitled to custody of the child:

"a. has failed to give the child the parental care or protection necessary for his physical or mental health, or

"b. although financially able, has willfully neglected to provide the child with the necessary support or education, or

"c. is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child or children; or

"4. A finding that a parent, having been ordered to contribute to the support of the child, has willfully failed to contribute during the preceding year.

"5. A finding that a parent has physically abused a child subsequent to having been found guilty of child beating or child abuse either in a criminal action or specifically so found in a child dependency neglect action in a proceeding in the juvenile division of a district court.

"B. However, nothing contained herein shall prevent a court from immediately assuming custody of a child and ordering whatever action may be necessary, including medical treatment, to protect his health or welfare. Nothing in this act shall be construed to authorize any court to terminate the rights of a parent to a child, solely because the parent, in good faith, provides for his child, in lieu of medical treatment, treatment by spiritual means alone through prayer in accordance with the tenets and practice of a recognized church or religious denomination."

This Court finds that the issue of constitutional validity of 10 O.S.1971, § 1130, squarely confronts it. The injuries here are consistent with sustained anal abuse, and negate the possibility of self-injury administered by a two and one-half year old child's physical capabilities.

Appellant places great reliance upon *Alsager v. District Court of Polk City, Iowa,* 406 F.Supp. 10 (S.D.Iowa, 1975), *affirmed* at

545 F.2d 1137 (8th Cir., 1976), to support the position that 10 O.S.1971, § 1130, is unconstitutional. In that case the United States District Court for the Southern District of Iowa was presented with a constitutional challenge to the Iowa statute dealing with termination of parental rights. The challenge had been presented in prior proceedings (384 F.Supp. 643), in which the District Court declined to rule thereon until remand by the Circuit Court of Appeals (518 F.2d 1160, 8th Circuit) with an appropriate direction. In holding the Iowa statute unconstitutional, the Alsager Court relied upon (A) its defective vagueness and the fact that the Iowa Supreme Court had never judicially restricted its application; and (B) its failure to accord procedural due process in requiring "clear and convincing evidence" as opposed to the "preponderance standard then in effect."

*Alsager, supra,* declared the Iowa Statute, Code of Iowa, § 232.41, overly vague, both on its face and as applied to the Alsagers. The Court found that neither the case law nor the way in which the law had been applied in that case had sufficiently narrowed the statute and defined the standard of necessary parental care and protection. The Court said:

> "In sum, the Iowa parental termination standards of 'necessary parental care and protection' and of '(parental) conduct . . . detrimental to the physical or mental health or morals of the child,' are unconstitutionally vague, both on their face and as applied, in that (1) they do not, and did not here, give fair warning of what parental conduct is proscribed, (2) they permit, and permitted here, arbitrary and discriminatory terminations, (3) they inhibit, and inhibited here, the exercise of the fundamental right to family integrity. * * * "

The Iowa Court said standards of "necessary parental care and protection," § 232.-41(2)(b), and of "parental conduct . . . detrimental to the physical or mental health or morals of the child," § 232.41(2)(d), are susceptible to multifarious interpretations, which prevent the ordinary person from knowing what is and is not prohibited. The Iowa Court noted that a reading of the petition and the termination statute would not have given the Alsagers notice of what they were doing wrong, i. e., they were not given a factual basis from which to predict how they should modify their past conduct, their "parenting," to avoid termination.

We are not persuaded by the *Alsager* case, *supra,* nor the reasoning of *Roe v. Conn,* 417 F.Supp. 769 (N.D.Ala.1976), which found a statute on child neglect unconstitutionally vague, adopting the reasoning and language of *Alsager, supra,* which requires the State to clearly identify and define the evil from which the child needs protection and to specify what parental conduct so contributes to that evil that the State is justified in terminating the parent-child relationship.

■ We agree with Appellants that the terms such as "care and protection necessary for the child's physical or mental health" are terms about which men and women of ordinary intelligence may disagree. Their answers would vary in large measure in relation to their differing social, ethical, and religious views, and to that extent such terms are vague. However, in our view, we do not find the statute unconstitutionally vague and overly broad nor couched in terms that have no common meaning.

We observe the Oklahoma termination statute, unlike that of Iowa, requires that the State grant parents six months at a minimum to correct the conditions found to be true as to neglect, 10 O.S.1976 Supp., § 1130(A)(3)(a).

We also note that in the instant case, in both the original petition filed January 18, 1974, and the motion regarding termination filed September 23, 1975, both the factual basis for termination and the legal standards permitting same were set forth clearly and precisely and that Appellants had adequate and fair warning of what parental conduct was found to be at issue—care and protection necessary for the child's physical health.

Appellant Keyes next raises the issue that her demurrer to the State's evidence was improperly overruled by the Trial Court. She argues that the record fails to show that any of the allegations of the State's petition filed January 18, 1974, existed on September 23, 1975, when the State filed its motion to terminate parental rights, alleging Keyes had failed to correct the conditions which resulted in the child's adjudication as dependent and neglected, after the six-month statutory period.

■ In determining whether a demurrer to the evidence should be sustained, the Trial Court should consider as true all evidence favorable to the party against whom the demurrer is directed, and all inferences that may be reasonably drawn from such evidence, and disregard all evidence favorable to the demurrant. *Stegall v. Davis*, 280 P.2d 706 (Okl.1955); *Nye v. Cox*, 440 P.2d 683 (Okl.1968). Based upon the motion, allegations and evidence in the record, we think the Trial Court properly overruled Appellant's demurrer.

■ Finally, Appellant Keyes argues that the denial of trial by jury in the termination proceedings was violative of her constitutional and statutory rights. This question was recently considered by this Court in *J. V. v. State of Oklahoma, Department of Institutions, Social and Rehabilitative Services*, 572 P.2d 1283 (Okl.1977), and determined contra to Appellant.

AFFIRMED.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN and BERRY, JJ., concur.

WILLIAMS, SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting:

There are two issues presented by this appeal. The first is whether the procedure by which appellant's parental rights were terminated denied her "fundamental fairness" as guaranteed by procedural due process. The second is whether the standards of parental conduct proscribed by 10

O.S. 1971, § 1130 are unconstitutionally vague.

The majority opinion overlooks the first issue and, in deciding the second, holds the statute constitutionally specific and precise. I must respectfully dissent. I believe that proper resolution of either issue requires reversal of this action.

In affirming this judgment, the majority sanctions a mode of terminating parental rights which:

(1) relieves the State of carrying its burden of proving by clear and convincing competent evidence that the facts are statutorily sufficient to support an order of termination; and

(2) places upon the parents the burden of disproving the sufficiency of facts necessary to support an order of termination; and

(3) permits the State to "bootstrap" its termination proceeding upon the circumstances which originally led to a child's adjudication even though those circumstances no longer exist and are unrelated to the facts upon which the termination action is based; and

(4) allows incompetent evidence to be introduced in support of termination by designating the proceeding as a mere "dispositional" hearing of the original adjudication; and

(5) denies parents the mandatory six month "grace period" to effect a change of conditions, even though this statutory six month provision was found by the majority to be the essential factor distinguishing our statute from the unconstitutional Iowa statute.

A short summary of the facts of this case illustrates these problems.

Derrick was first brought to the attention of the court by a petition filed on January 18, 1974, which alleged that he was a dependent and neglected child by reason of his mother's failure to provide him with adequate nutrition and medical care and that as a result of her alleged failure, he was suffering from hypernatremia and severe anemia. (For convenience, these con-

ditions will be referred to as "Facts A.") The petition did not seek termination of appellant's parental rights. The petition further alleged that Derrick's father was unknown. Hearing was subsequently held and, upon stipulations and admissions of appellant, the court found the allegations "true as to the mother's interests." Derrick was adjudicated a dependent and neglected child, made a ward of the court, and placed in the custody of the Department. Although Robert Wesley, (appellant in companion case No. 49,718) did appear personally before the court, the matter of his interests was set off and never adjudicated. He was neither alleged, nor found, to be responsible in any way for Derrick's health problems.

Later in March of 1975, the court ordered Derrick's custody returned to appellant under supervision of the Department based upon a finding that this change of custody would be in his best interests.

Then, on September 23, 1975, following Derrick's hospitalization for rectal bleeding, an unverified motion to terminate the appellant's parental rights was filed. While it is my opinion that an unverified motion is not sufficient to vest the court with jurisdiction to determine the issue of termination, inasmuch as 10 O.S. 1971, § 1103 requires a verified petition, I shall not further belabor that point here. My views on this issue are fully set forth in my Dissenting Opinion in *J. V. v. State of Oklahoma, Department of Institutions, Social and Rehabilitative Services, Okl.*, 572 P.2d 1283 (1977).

The substance of the motion alleged that: " * * * [Derrick] is 2½ years of age, declared and adjudged to be dependent-neglected on January 18, 1974. That Robert Wesley and Ann Keyes are the natural father and mother of said child *and, after at least six (6) months since the adjudication of said child, have failed to show that the conditions which resulted in the dependency-neglect of said child have been corrected.*
On or about 9/20/75, while in the care of said natural father, said child was assaulted and suffered a perforated colon, severely lacerated rectum, five small lesions on the back of his right thigh; said natural mother placed said child in the care and control of said natural father, and said father either assaulted said child, resulting in the aforementioned injuries, or failed to protect said child from said injuries; due to the above circumstances, said child underwent surgery on 9/20/75 and is currently residing at the Oklahoma Osteopathic Hospital, Tulsa, Oklahoma.
That permanent termination of the parental custody of said child is necessary to protect his physical and mental health and morals."

Hearing was held and the State presented four witnesses in support of its motion. Each witness testified about Derrick's hospitalization for rectal bleeding on September 20, 1975, and his subsequent condition. (The facts brought forth at this hearing will be referred to as "Facts B.") Appellant objected to this testimony as unrelated to the motion's allegation that termination was being sought because the parents had not, after at least six months, corrected the conditions ("Facts A") which resulted in Derrick's adjudication on January 18, 1974. These objections were overruled as was appellant's demurrer to the evidence.

Because of the Referee's ruling that the termination hearing was merely a "dispositional" hearing which did not need to be conducted under the rules of evidence, the State was allowed to introduce incompetent evidence and opinions against appellant. The most flagrant example of rank hearsay that I have ever observed on either the trial or appellate bench, was permitted—the assistant district attorney prosecuting the case was allowed, over appellant's objections, to take the stand and testify as a rebuttal witness against appellant as to what one of Derrick's doctors had told him about Derrick's condition.

The Referee found that existing conditions had not been corrected and that appellant's parental rights should be terminated. This order was subsequently confirmed by the Juvenile Judge.

The burden of proof in a termination action is, of course, on the party seeking to obtain it,[1] here, the State of Oklahoma. The State did not prove by clear and convincing competent evidence at either hearing that the facts warranted and necessitated terminating appellant's parental rights. The first hearing did not involve termination; the only issue was whether, by reason of "Facts A", Derrick was a dependent and neglected child. At the second hearing which concerned the motion to terminate, the State was relieved of its burden of proof because that hearing, although concerned with "Facts B", was treated as a dispositional hearing of the original adjudication.

Neither this appellant nor appellant Wesley were allowed the mandatory six month period within which to change conditions and prevent the termination order from issuing. As termination was not sought in the first proceeding as to either parent (it should be remembered that appellant Wesley was not even part of that proceeding), it could hardly be said that they had a period of six months to prevent that which could not occur. In fact, Derrick's mother did correct those conditions and Derrick's custody was returned to her.

Nonetheless, when the State subsequently decided to seek termination because of "Facts B" (Wesley's alleged abuse) the motion to terminate recited that the action was based on the failure of the "father and mother . . . after at least (6) months since the adjudication . . . to show that the conditions which resulted in the dependency-neglect . . . [had] been corrected."

This allegation obviously resulted from the State's attempt to come within the six month provision of § 1130(a)(3)(c) and thereby establish statutory grounds for termination.

This statute was never meant to be applied to the facts before us in this peculiar

manner which results in constitutionally deficient procedure.

The provisions in question read:

"A. The finding that a child is delinquent, or mistreated or neglected, shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

\* \* \* \* \* \*

"3. A finding that a parent who is entitled to custody of the child:

"a. has failed to give the child the parental care or protection necessary for his physical or mental health, or

"b. although financially able, has willfully neglected to provide the child with the necessary support or education, or

"c. is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, *and* the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected *and* a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals; provided further, that the court may extend the time in which such parent may show the condition has been corrected, if, in the judgment of the court, such extension of time would be in the best interest of the child or children;

\* \* \*"

There is only one sensible and constitutional construction of this statute. It is this: the statute presupposes that termination of parental rights was sought at the adjudicatory hearing, that the matter was tried and the matter resolved adverse to the

---

**1.** See, e. g., *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1969); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Alsager v. District Court of Polk County, Iowa, supra*; *In Interest of Hochmuth, Ia.*, 251 N.W.2d 484 (1976); *In re Sego*, 82 Wash.2d 736, 513 P.2d 831 (1973); *In re Welfare of Larson, Minn.*, 251 N.W.2d 325 (1977).

parents. In other words, the statute contemplates termination as a remedy for conditions detrimental to a child's well being *only* from an adjudicatory proceeding in which those issues have been tried.

The statute takes for granted that before parental rights are susceptible to termination for the parents' failure to show that conditions were corrected within six months after the child was adjudicated dependent and neglected, the following had already occurred:

(1) a verified petition was filed which sought to have the child adjudicated dependent and neglected *and* prayed for termination of parental rights (10 O.S. 1971, § 1103); and

(2) the parents were given notice that termination, as well as the child's adjudication as dependent and neglected, would be an issue of the proceeding (10 O.S. 1971, § 1131); and

(3) the issues involved in termination, as well as dependency and neglect were heard; and

(4) the State bore its burden of proof on the issues and showed by clear and convincing competent evidence that termination of parental rights was warranted under the statute and necessary for the child's welfare; and

(5) the court decided the issues adverse to the parents; and

(6) the court advised the parents that because of their certain specified conduct, the child was a dependent and neglected child under the laws of Oklahoma; and

(7) that the facts supported and necessitated terminating their parental rights at that time; but that

(8) the law grants parents a period of six months to attempt to correct those behaviors which are found to be intolerably detrimental to the child; and

(9) that they had a period of six months to correct those specific conditions and come back before the court with proof that the conditions had been corrected; and

(10) that the burden now shifted to them to correct those conditions and to come

before the court within six months to show that change, or an order terminating their parental rights would be entered at the expiration of that period.

So where, as in the instant case, termination of parental rights is sought subsequent to a child's adjudication, the action for termination cannot be bootstrapped into the scope of § 1130 merely by the existence of that prior adjudication. This is true whether or not the conditions which resulted in that adjudication were changed by the parents. The sufficiency of the facts to support termination must stand or fall on its own merit. Parents of a child who was for some reason previously adjudged a dependent and neglected child, are entitled to no fewer constitutional and statutory protections than surround those parents who are threatened with termination the first time their child comes to the court's attention.

The mechanics of the requisite procedure are simple. When the State decides to seek termination of parental rights and the child concerned was previously adjudged dependent or neglected, a new verified petition must be filed seeking to have the child declared dependent and neglected under *current* conditions. It should, of course, set forth those conditions with particularity, further alleging that those conditions support and necessitate termination of parental rights and it must pray for that remedy. If, after notice and hearing, that issue is determined adverse to the parents, they must be granted the statutory period of six months to attempt to correct those conditions which were found by the court to have an intolerable effect on the child. This is no more than the State must do to obtain termination when a child has not been previously adjudicated.

The construction given the statute by the trial court, and sanctioned by the majority's affirmance, creates absurd as well as unconstitutional results. Every dependency and neglect action—even though termination was not sought and the matter has been long since resolved to everyone's (including the court's) satisfaction—forms the statutory basis for a later (1, 5, 8, or 18

years) action by the State for termination by mere allegation that the parents did not correct the conditions which resulted in that adjudication. This is so even though the parents had *no* notice that:

> there were certain conditions which they needed to correct; or that if they didn't correct them their parental rights could be terminated; or that the burden of proof was on them, not the State.

Besides shifting the burden of proof to the parents, allowing incompetent evidence to be introduced against them and denying them the mandatory six-month grace period, the trial court also denied them of a trial by jury. I believe that they had a fundamental right to a trial by jury which is assured by the Oklahoma Constitution, Art. 2, § 19 and 10 O.S. 1971, § 1110. See, Dissenting Opinion, *J. V. v. State of Oklahoma, Department of Institutions, Social and Rehabilitative Services, supra.*

Additionally, I cannot agree with the majority that § 1130(A)(3)(c) sets forth standards of proscribed parental conduct with constitutionally sufficient precision. It is virtually identical to the statute struck down for vagueness in *Alsager, supra.* Nor, as discussed above, do I believe the statute was applied to appellant in a constitutionally permissible manner.

The majority concedes that "terms such as 'care and protection necessary for the child's physical or mental health' are terms about which men and women of ordinary intelligence may disagree." And, that "[t]heir answers would vary in large measure in relation to their differing social, ethical, and religious views . . . ." This subjectivity is, of course, the very heart of the danger of vague laws.

Our statute suffers the same "void for vagueness" problems found in the statutes struck down in *Alsager, supra*; and *Roe v. Conn.,* 417 F.Supp. 769 (N.D.Ala.1976). We could cure these problems by a restrictive construction. We have never attempted to narrow the statute (see e. g., *Carignan v. State,* Okl., 469 P.2d 656 (1970); *In re Boy-*

er, Okl., 490 P.2d 1076 (1971); *In re Wright,* Okl., 524 P.2d 790 (1974); *Cotter v. Hunter,* Okl., 540 P.2d 1159 (1975)), and the majority rejects the opportunity to do so here.

This dissent should not be construed to suggest that Derrick should be returned to his mother's custody. There is no doubt that the record before us supports removing him from her custody and placing him a protective environment at this time. Neither should this dissent be taken as advocating the notion that abuse of a child is not a sufficient ground upon which to terminate, finally and irreversibly, parental rights, where that action is properly brought and prosecuted.

The only point of this dissent is that if and when termination of parental rights is accomplished, it must be done in a lawful manner that is in accord with our statutes and consistent with the Constitution.

This guarantee of lawful action is absolutely imperative whether we are concerned with wonderful or terrible parents. We must not allow the facts of this case to overwhelm us so that we err in our construction and application of the law. For the truth is that today we create a rule of law which, by the nature of our legal system, will apply to every citizen as fully as its does to Derrick's parents. If we determine that they need not be afforded constitutional rights and statutory protections, then those rights and protections may be withheld from all of us. I am reminded of Justice Frankfurter's following observations on this point in his eloquent dissent in *United States v. Rabinowitz*: [2]

> "The old saw that hard cases make bad law has its basis in experience. But petty cases are even more calculated to make bad law. The impact of a sordid little case is apt to obscure the implications of the generalization to which the case gives rise. * * *
>
> "It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people. And so,

2. 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

while we are concerned here with a shabby defrauder, we must deal with his case in the context of what are really the great themes expressed by the Fourth Amendment. A disregard of the historic materials underlying the Amendment does not answer them."

I would reverse the trial court's order terminating appellant's parental rights, leaving the order placing Derrick's temporary custody with the Department in full force and effect.

I am authorized to state that WILLIAMS and DOOLIN, JJ., join with me in this dissent.