743 P.2d 1041 (1987)
In the Matter of A.E., E.E., E.E., (Children under the age of eighteen (18) years), R.E., A.E., and E.E., Appellants,
v.
The STATE of Oklahoma, A.E. and E.E., Appellees.
No. 64831.
Supreme Court of Oklahoma.
July 21, 1987.
As Corrected July 30, 1987.
Rehearing Denied October 27, 1987.
Stanley D. Monroe, Tulsa, for R.E. and A.E., appellants.
Terry Bitting, Tulsa, for E.E., appellant.
J. Dennis Semler, Asst. Dist. Atty., for State of Okl., appellee.
Catherine O'Leary, Asst. Public Defender, for the Children, A.E., E.E., appellees.
*1042 KAUGER, Justice.
This is an appeal from the termination of parental rights. The father's parental rights were extinguished under the provisions of 10 O.S. 1981 § 1130(A)(2) for abandonment. The mother's parental rights were terminated pursuant to 10 O.S. 1981 § 1130(A)(3) for failure to follow a contractual agreement drafted by a social worker for the Department of Institutions, Social & Rehabilitative Services (DISRS).
The parents/appellants allege, among other assertions of error, violation of their constitutional rights and denial of due process of law in both the adjudicatory and dispositional stages of the proceedings leading to termination of parental rights. These allegations include: 1) termination based on less than clear and convincing evidence; 2) failure to attach a verified affidavit to the petition to terminate parental rights in accordance with the Uniform Child Custody Jurisdiction Act (UCCJA); 3) imposition of standards of parental conduct by Department of Institutions, Social & Rehabilitative Services (DISRS) without judicial approval in violation of extant Oklahoma law; 4) termination of the father's parental rights on the grounds of abandonment without a prior adjudication of the child's deprived status; 5) insufficient notice; and 6) denial of trial by jury in violation of the Okla. Const. art. 2, § 19.

I

TERMINATION MUST BE BASED ON CLEAR AND CONVINCING EVIDENCE. ATTACHMENT OF A VERIFIED AFFIDAVIT TO THE PETITION TO TERMINATE PARENTAL RIGHTS WAS NOT REQUIRED PRIOR TO THE ADOPTION OF THE UNIFORM CHILD CUSTODY JURISDICTION ACT.
The first two allegations of error are not well founded, and may be disposed of summarily. From an examination of the transcript, we discern that the trial court recognized the proper burden of proof, i.e., clear and convincing evidence.[1] We also find that attachment of a verified affidavit was unnecessary because the UCCJA, which requires the attachment, was not adopted until the proceedings under attack were well underway.[2]

II

IMPOSITION OF STANDARDS OF PARENTAL CONDUCT MUST BE APPROVED JUDICIALLY AND COMMUNICATED TO AFFECTED PARENTS.
As to the third allegation of error, it is undisputed that the "contract" was not *1043 judicially sanctioned as required by our prior case law. In the Matter of C.G., 637 P.2d 66, 68 (Okla. 1981). The Court said:
"Due process inexorably commands notice which reasonably informs a person that his legally-protected interest may be adversely affected. Any parent whose child is adjudged to occupy a legal status termed `deprived' must be judicially advised of those parental conduct norms which he is expected to follow or eschew to recapture a legally unencumbered standing as a parent. The very purpose of these norms is to afford the parent an opportunity to ameliorate his condition and to effectively defend against termination efforts. Judicial notice cannot depend on inferences to be gathered from reports of social workers or of medical doctors. It can only be found in written judicially-prescribed norms of conduct to which the parent is expected to conform. Once these norms have been fashioned with clarity, the parent is entitled to the minimum statutory period of three months to conform."
The holding in C.G., that a social worker's "contract" is constitutionally infirm unless it bears a judicial imprimatur and is communicated to both affected parents, controls our resolution of this allegation of error. It is, therefore, unnecessary to test the constitutionality of the behavioral norms imposed by the DISRS "contract."

III

IN THE ABSENCE OF A PRIOR ADJUDICATION OF THE CHILD'S DEPRIVED STATUS, PARENTAL RIGHTS CANNOT BE TERMINATED FOR ABANDONMENT.
The fourth allegation concerns the lack of the jurisdictional prerequisite to termination of the father's parental rights, i.e., a prior adjudication of the child's deprived status. At the time the trial court heard the appeal from the referee, two orders were presented which the court indicated "looked like an adjudication." Those orders referred to C. and E., who are now over eighteen and not part of this case. The state was willing to concede that, for purposes of the hearing, "there was no adjudication." Any termination of parental rights pursuant to 10 O.S. 1981 § 1130 requires either a prior or a simultaneous adjudication of a child's deprived status;[3] further, the prior adjudication must precede termination.[4] Because the father may not have received notice of the prior adjudications, and because there was no adjudication as to the father, even after the pleadings were amended, the trial court lacked the requisite foundation upon which to terminate the father's parental rights.

IV

DUE PROCESS REQUIRES NOTICE TO THE AFFECTED PARENTS.
The sufficiency of notice to the father, alleged as the fifth error of the trial court, is in dispute. In the Matter of C.G., this Court recognized that due process requires notice reasonably informing a parent that legally-protected interests may be affected adversely. We are unable to determine from either the record or the transcript whether the notice was in accord with procedural due process.

V

THE RIGHT TO JURY TRIAL IS CONSTITUTIONALLY MANDATED BY THE OKLAHOMA CONSTITUTION AND THE OKLAHOMA JUVENILE CODE.
The mother waived her rights to a jury trial on the adjudicatory petition.[5] However, *1044 before termination proceedings began, the father's application for jury trial was denied. The parents urge reexamination of the constitutional and statutory provisions relating to the right to jury trial at termination proceedings, arguing that adequate protection of the family unit and objective determination of whether standards have been judicially imposed require jury determination.
This case is fraught with infirmities, any one of which might require summary reversal. However, the prior divergence of opinion among members of this Court, as well as the expansion of other rights in the juvenile arena,[6] lead us to the conclusion that the time is ripe for a careful reconsideration of the right to a jury trial at termination proceedings. The need to protect parents' rights to the companionship, care, custody, and management of their children has been recognized by the courts under the United States and Oklahoma Constitutions.[7] It is in light of this axiom that the right to jury trial in termination proceedings must be scrutinized.
A detailed discussion of the parties' conduct, often obscures the implications and ramifications of the applicable constitutional guarantees and statutory protections at issue. A recitation of the underlying facts is unnecessary; because we are squarely presented with a pure question of law, and as a practical matter, our holding today will apply, not only to these parents, but also prospectively, after the mandate is issued in this case,[8] to every citizen.
In J.V. v. State Dep't of Insts., Social & Rehabilitative Servs., 572 P.2d 1283, 1285 (Okla. 1977), a divided court held that juries were neither constitutionally nor statutorily required at termination proceedings, and that the right to a trial by jury need be afforded only at the dependency and neglect stages of the proceeding. Since J.V., the issue of jury trial at termination proceedings, when raised, has been summarily *1045 dismissed.[9] In each of those cases, there have been strong dissents pointing out errors in the Court's analysis of the requirements of the Okla. Const. art. 2, § 19 and of 10 O.S. 1981 § 1130.
The majority in J.V., supra, when considering art. 2, § 19, rejecting the right to jury trial at termination proceedings, relied on the language in Keeter v. State ex rel. Saye, 82 Okl. 89, 198 P. 866, 17 A.L.R. 557 (1921):
"The right to trial by jury, declared inviolate by section 19, art. 2 of the Constitution of Oklahoma, except as modified by the Constitution itself, has reference to the right as it existed in the territories at the time of the adoption of this Constitution, and the right to a jury trial therein referred to was not predicated upon the statutes existing in territories at the time, but the right as guaranteed under the federal constitution and according to the course of the common law."
The United States Supreme Court recognized in McKeiver v. Pennsylvania, 403 U.S. 528, 548, 91 S.Ct. 1976, 1987, 29 L.Ed.2d 647, 662-63 (1971), that the question of trial by jury in juvenile proceedings was a question of state law. The pertinent Keeter language for our analysis is the phrase "except as modified by the Constitution." An amendment supersedes law existing prior to its enactment.[10] Prior to 1969, art. 2, § 19 made no mention of the right to jury trial in juvenile proceedings;[11] however, the 1969 amendment superseded the prior language, expressly providing for jury trial in juvenile proceedings. The language of art. 2, § 19 has done exactly what Keeter requires in order to enlarge the right to jury trial as it existed at common law. The amendment modified the Constitution enlarging the right.
Another case emphasized in J.V., supra, is Maryland Nat'l Ins. Co. v. Dist. Court, 455 P.2d 690, 695 (Okla. 1969), in which the Court upheld the constitutionality of statutes providing for enforcement of liability in bail bond forfeiture proceedings by a non-jury trial. The issues involved in the Maryland case are distinguishable in one critical aspect from termination proceedings. Maryland dealt with a statute specifically denying the right to jury trial,[12] when under a prior statute, jury trial had been governed by general rules of civil procedure.[13]
This Court is cognizant that at common law rights and liabilities arising from status-based relationships were determined in equitable proceedings.[14] Wives, children, servants, and slaves, while not wholly without rights, were nonetheless considered to be chattels.[15] During the life of our nation, fundamental changes have taken place, not only in what has been designated traditionally as public law and private law, but also in what might be called social law. This includes family law as well as those laws affecting race, class, sex, and generation *1046 relationships. Marriage and divorce have become increasingly a consensual matter while parental power over children has been reduced dramatically. (Patria potestas, the father's power of life and death over his children has long been eliminated.) As the family has been left more and more to its own devices, social relationships have become more and more subject to legal restraints  legal developments which are not easily reconciled with traditional legal categories.[16]
Because parental rights could not be terminated at common law  juvenile proceedings were non-existent  there was no constitutional right to trial by jury for termination of parental rights when the Oklahoma Constitution was adopted.[17] In many jurisdictions, the rule is that statutes in derogation of the common law are to be strictly construed. Since 1910, the common law, as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, has remained in force in aid of the general statutes of Oklahoma. However, the rule that statutes in derogation of the common law are to be strictly construed is inapplicable to the laws of this state which require a liberal construction in order to achieve their objectives and to promote justice.[18]
The people of this state amended the Okla. Const. art. 2, § 19, effective January 13, 1969:
"The right of trial by jury shall be and remain inviolate except in civil cases wherein the amount in controversy does not exceed One Hundred Dollars ($100.00), or in criminal cases wherein punishment for the offense charged is by fine only, not exceeding One Hundred Dollars ($100.00). Provided, however, that the Legislature may provide for jury trial in cases involving lesser amounts. Juries for the trial of civil and criminal cases shall consist of twelve (12) persons; but in the trial of misdemeanors, proceedings for the violation of ordinances or regulations of cities and towns, juvenile proceedings, actions for forcible entry and detainer, or detention only, of real property and collection of rents therefor, and civil cases concerning causes of action involving less than Twenty-five Hundred Dollars ($2,500.00), juries shall consist of six (6) persons. In civil cases, and in criminal cases less than felonies, three-fourths (¾) of the whole number of jurors concurring shall have power to render a verdict. In all other cases the entire number of jurors must concur to render a verdict. In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein." (Emphasizes language added by the 1969 amendment.)
In determining the impact on Oklahoma law of this amendment, two rules of construction enunciated by this Court in Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447, 449 (1944), are instructive: (1) the meaning of a constitutional provision is the meaning as understood by those framing and adopting the constitution;[19] and (2) the words of a constitution are to be given their plain, natural and ordinary meaning.[20]
Adherence to Wimberly mandates the right to trial by jury in termination proceedings. The Legislature drafted the constitutional amendment contemporaneously with its enactment of the statutory provision establishing termination procedures.[21] The fact that art. 2, § 19 and § 1130 each became effective January 13, 1969, evidences not only the framers' intent to provide jury trials in termination proceedings by drafting a constitutional amendment providing for jury trials "in juvenile proceedings," but also the people's decision to modify the constitution to so provide. The Legislature has amended and *1047 expanded the Juvenile Code to provide trial by jury in proceedings to determine "if a child is within the purview of the Act."[22] Although § 1130 neither specifically denies nor affords the right, when it is construed with art. 2, § 19, trial by jury must be afforded. Otherwise, the statute is unconstitutional.[23]
We recognize that § 1130 was amended in 1986 to provide an avenue by which parents or guardians may seek termination of parental rights without the State instituting the action.[24] However, the issue of whether such "private termination" could be accomplished without an opportunity for jury trial is not before us. Nor are 10 O.S.Supp. 1986 § 1130 or 10 O.S.Supp. 1986 § 60.6, providing for adoption without the consent of a natural parent, at issue here. Therefore, we need not address the issue of whether these sections are also constitutionally infirm.
The Juvenile Code, 10 O.S. 1981 § 1101(f), (g), recognizes two types of hearings: adjudicatory and dispositional. This Court in J.V. v. State Dept. of Insts., Social & Rehabilitative Servs., 572 P.2d 1283, 1284-85 (Okla. 1977); Matter of Keyes, 574 P.2d 1026, 1030 (Okla. 1977); and Wilson v. Foster, 595 P.2d 1329, 1331-32 (Okla. 1979), refused to recognize the constitutional right to trial by jury. The Court also held that a hearing to determine whether a parent's parental rights should be terminated is merely the disposition of a child previously adjudicated to be delinquent, deprived, or in need of supervision,[25] and that termination proceedings were not within the purview of the Act. Today, we expressly overrule these holdings.
Termination of parental rights is not merely a disposition of an adjudicated child. It is the unmitigated cessation of all natural and legal rights the parent has in his/her child,[26] and a permanent parting of all bonds linking parent to child. It is incongruous, as well as unconstitutional, to afford jury trials at the first stage adjudicatory hearing while parents still have the opportunity to correct the conditions bringing them under the auspices of the Juvenile Code, and to deny the right in proceedings where the parent-child relationship is severed forever. The determination of whether conditions warranting termination specified by 10 O.S. 1981 § 1130 exist is an adjudicatory proceeding within the contemplation of the statute.[27]
The opportunity to be heard must be meaningful and appropriate to the nature of the interest involved in the case. This is especially true where a judicial procedure *1048 will determine the continuance or severance of the parent-child relationship.[28] Both the citizens of Oklahoma, through their adoption of art. 2, § 19, and the Legislature, through its enactment of the Juvenile Code, have spoken on the issue of jury trial in juvenile proceedings.[29]
We find that parental rights are too precious to be terminated without the full panoply of protections afforded by the Oklahoma Constitution.[30] We know that the best interest and welfare of the child is the primary consideration,[31] but we also know that this goal is best achieved by full compliance with the law. Insofar as the constitutional right to jury trial exists, it cannot be annulled, obstructed, impaired, or restricted by legislative or judicial action. Where the Constitution provides that the right of trial by jury shall remain inviolate, legislation must be both construed strictly and observed vigilantly in favor of the right. This right cannot be surrendered except by voluntary consent or waiver[32]  it cannot be abrogated arbitrarily by a court.
CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED.
DOOLIN, C.J., and SIMMS, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.
HARGRAVE, V.C.J., and HODGES, LAVENDER and OPALA, JJ., dissent.
*1049 OPALA, Justice, with whom HARGRAVE, Vice Chief Justice, and LAVENDER, Justice, join, concurring in Parts I-IV and dissenting from Part V.
Part V of today's opinion announces that, when a child's status has been adjudicated as "deprived" and the parental bond is sought to be terminated, the affected parent must be afforded a trial by jury under the mandate of Art. 2 § 19, Okl. Const.[1] I recede from this pronouncement which overrules extant case law[2] because I find its reasoning fundamentally flawed in these three respects: (1) there is no constitutional command, either state or federal, which mandates a jury trial for parental termination proceedings, (2) the court's opinion has created at least one subclass of parents who are to be deprived of jury trial and denied equal protection of the law and (3) the court's decision offends Art. 5 §§ 46 and 59, Okl. Const.[3]
The court's willingness to adopt the notion that parental termination is a "juvenile proceeding" has placed it on the horns of a dilemma. If today's opinion extends the right to trial by jury to all persons whose parental status is at risk in any judicial proceeding, more than just jury trials for juvenile proceedings have been added to the command of Art. 2 § 19, Okl. Const., without any warrant from its text. On the other hand, if less than all such persons are to be benefited by today's pronouncement, the Equal Protection Clause and Art. 5 §§ 46 and 59, Okl. Const., have been violated. No subclass of parental termination litigants may be severed from the rest to receive a mode of trial different from one that is accorded to others. For trial purposes they comprise, and must be treated as, a single class.

I

STATE FUNDAMENTAL LAW DOES NOT AFFORD A RIGHT TO TRIAL BY JURY IN TERMINATION PROCEEDINGS
There is no federal constitutional mandate for a trial by jury in "juvenile proceedings." While the Sixth Amendment's right to a jury trial in criminal prosecutions is binding on the state,[4] juvenile proceedings are not "criminal" in nature and hence are outside the ambit of the Sixth Amendment.[5] The Seventh Amendment applies only in the federal courts.[6] In McKeiver v. Pennsylvania[7] the Court held that the Due Process Clause of the Fourteenth Amendment does not mandate a trial by jury in the adjudicatory phase of a state juvenile delinquency proceeding.
The right to trial by jury, declared "inviolate" by Art. 2 § 19, Okl. Const.,[8] is also *1050 preserved by the federal constitution.[9] It is extended only in those cases where it existed at common law. Except as modified by the constitution itself, the right to trial by jury was "frozen" as it stood in 1787 English jurisprudence. All actions or proceedings which called for a jury trial in England at that time also require the same mode of trial today. The right is "preserved" for all those cases.[10] Because termination proceedings did not exist at common law, the Inviolate Clause does not preserve a right to trial by jury for them.
By a vote held in 1968, Art. 2 § 19, Okl. Const.,[11] was amended to include a proviso that added "juvenile proceedings" to other classes of suits triable to a 6-person jury. The court today anchors its pronouncement upon this amendment.
I can agree neither with the court's reasoning nor with the result reached here. Firstly, the object of the proviso added in 1968 was to regulate the size of the jury  where affordable either at common law or by statute  for litigation in the soon-to-be-effective single-level trial bench of the post-1969 district court and to define those cases where a jury of less than the requisite common-law number of twelve was to be authorized. The amendment was meant to secure for the people, and thus shield from legislative change, the there-prescribed jury size for each defined class of cases. Secondly, a termination of the parental bond is not a judicial remedy comprised within the rubric of "juvenile proceedings."
The sweep of § 19 must be divined from the historical antecedents of the Inviolate Clause as well as from the genesis of the so-called "juvenile law."[12] We are not dealing here with the common law but rather with a fairly recent statutory suprastructure. The focus of our analysis is neither on the best interests of the child nor on the parental rights to be affected but on the cold letter of the fundamental law  the people's charter.
Laws affecting parent-and-child relations come within the bounds of family law while "juvenile law" is centered on the child.[13] *1051 The process of juvenile law is designed to do two things: (1) to take underage persons out of the adult criminal prosecution system and to treat their wrongdoing as delinquency and (2) to facilitate the state's intervention into the familial domain for the purpose of protecting abused and neglected children. Oklahoma's statutory scheme provides remedies for judicial restraint of parental control as well as for the severance of parental bond both within and outside the Juvenile Code.[14]
The termination remedy is distinguishable from delinquency and deprived-status proceedings in one important aspect; its focus is on the future of the parents' rights in the child. In deprived-status and delinquency proceedings the accent is solely on the future and legal disposition of the child. Termination proceedings, a fairly recent addition to the arsenal of legal remedies, cannot truly be considered a part of juvenile law. They are most often initiated by the government only at the point where welfare authorities decide that a parent is beyond rehabilitation and has failed to show promise of providing proper care for the child. Early impetus for enacting termination statutes came from the economic pressures placed on public and private welfare agencies in implementing the multitude of child welfare programs.[15] These laws had a twofold purpose: (a) to free children from unfit parents and thus render them eligible for adoption and (b) to ease the financial burden upon state and foster care agencies.[16]
In short, termination of parental rights as a judicial remedy cannot be considered as fairly comprised within the meaning of "juvenile proceedings" as that term appears in the 1968 amendment of § 19.

II

TODAY'S PRONOUNCEMENT VIOLATES STATE AND FEDERAL FUNDAMENTAL LAW

A. The Equal Protection Clause
Parents confronting potential loss of their children by judicial termination of rights comprise but a single class of individuals who, until today, have been recipients of equal procedural treatment. None was afforded the right to jury trial. Today's holding singles out one subclass of these parents for jury trial while it remains silent or noncommittal about others whose interest may be at risk in the context of adoptions and private interparental disputes.
Though free to enlarge upon the basic freedoms guaranteed by the federal constitution, states may not create artificial boundaries for suitors in the same class. The Equal Protection Clause is violated when some but not all litigants in an entire class are singled out for the benefit of trial by jury.[17] Although the Equal Protection Clause does not require that all persons receive identical treatment, it does mandate that the distinctive feature of a classification have some relevance to the purpose for which it has been created.[18] The only purpose for the court's classification today is to afford some parents the right to demand a jury trial; the only distinction between this newly created subclass and the wider general class lies in the person or entity prosecuting the claim for termination. I find no rational connection between the distinction and the purpose for the classification.[19]
*1052 Baxstrom v. Herold[20] and Humphrey v. Cady[21] stand as authority for the principle that state law offends the Equal Protection Clause when it affords different modes of trial to persons who belong to the same litigation class. For jury trial purposes, the court's pronouncement today trichotomizes parental claims into (1) proceedings by the state under 10 O.S. Supp. 1986 § 1130; (2) private interparental disputes based upon grounds provided under 10 O.S. Supp. 1986 § 1130(D) and (3) adoptions without the other parent's consent under 10 O.S. Supp. 1986 § 60.6. The court's holding that the right to trial by jury avails to parents in the first, or possibly even the second, group clearly results in extending the constitutional right to trial by jury far beyond the permissible rubric of "juvenile proceedings."

B. State Fundamental Law
Today's pronouncement also violates Art. 5 §§ 46 and 59, Okl. Const.; the former requires that court procedure be uniformly extended to all persons similarly situated[22] and the latter prohibits a different mode of trial for the single class of parents haled into court for termination of rights to their children.[23]

C. Asymmetry is created by today's pronouncement
Today's inclusion of parental terminations in the class of § 19 "juvenile" proceedings commits Oklahoma to a further extension of jury trials to all purely private interparental contests for severance of a child's bond and to all quests for a consentless adoption. This is reason enough to reject the notion embraced by today's opinion. Because I am unwilling to join in pledging myself to a constitutional construction so very fraught with the spectre of asymmetry and distortion in our legal tradition, I dissent from Part V of today's pronouncement.
In short, my dissent from today's pronouncement rests on three grounds: (1) the court's opinion offends the Inviolate Clause in Art. 2 § 19, Okl. Const., by extending jury trials to termination proceedings and by mistakenly viewing parental termination as a juvenile proceeding; (2) the court commits Oklahoma to a further and unwarranted extension of jury trials to cases clearly not embraced within the term "juvenile proceeding"  private interparental terminations and adoption-related proceedings to declare a child eligible for adoption without the other parent's consent and (3) the court's opinion offends the state's fundamental law that (a) mandates uniformity of court procedure for like-situated litigants and (b) prohibits classification of similarly situated litigants based on unreasonable grounds.
NOTES
[1] Merrell v. Merrell, 712 P.2d 35, 37 (Okla. 1985); Matter of Adoption of V.A.I., 660 P.2d 139, 141 (Okla. 1983); Matter of Adoption of C.M.G., 656 P.2d 262, 265 (Okla. 1982); Matter of C.G., 637 P.2d 66, 69-72 (Okla. 1981); Matter of Adoption of Darren Todd H., 615 P.2d 287, 290 (Okla. 1980).
[2] These proceedings began in April of 1979, and the UCCJA was not adopted until October 1, 1980.
[3] Davis v. Davis, 708 P.2d 1102, 1109 (Okla. 1985); Matter of Lyni P., 626 P.2d 864, 866 (Okla. 1981); Matter of Christopher H., 577 P.2d 1292, 1293 (Okla. 1978); Matter of J.F.C., 577 P.2d 1300, 1302 (Okla. 1978); Price v. Price, 573 P.2d 251, 254-55 (Okla. 1977) (Doolin, J. concurring specially); Price v. Price, id. at 257 (Simms, J. concurring specially).
[4] Davis v. Davis, see note 3, supra; Matter of J.L., 578 P.2d 349, 351 (Okla. 1978).
[5] In the absence of a waiver on remand, the mother and the father will be entitled to a jury trial. Seymour v. Swart, 695 P.2d 509, 511 (Okla. 1985).
[6] Affording the protections for right to jury trial at termination proceedings preserves consistency with other fundamental rights. In accordance with the views of at least a portion of the justices on this Court expressing the opinion that provision of independent counsel should be mandatory upon a finding that it is necessary to protect the interests of the child, the Legislature made provision of such counsel mandatory in October of 1977. See, Price v. Price, note 3, supra at 257 (Simms, J. dissenting); J.V. v. State Dept. of Insts., 572 P.2d 1283, 1295 (Okla. 1977) (Simms, J. dissenting). See also, Matter of T.M.H., 613 P.2d 468, 469 (Okla. 1980).

Title 10 O.S. 1981 § 1109 provides in subsection (b): "... Where necessary to protect the interest of the child the court shall appoint a separate attorney for the child regardless of any attempted waiver by the parent or other legal custodian of the child of the child's right to be represented by counsel...." (Emphasis supplied) This Court has interpreted the statute to require the state to be responsible for assuring that the child is adequately represented and that such representation shall not depend upon financial ability. Although these cases were decided under the 1971 version of § 1109(b), the provisions remain substantively the same. Matter of Christopher W., 626 P.2d 1320, 1322 (Okla. 1980); Matter of T.M.H., 613 P.2d 468, 469 (Okla. 1980). See also, Matter of T.R.W., 722 P.2d 1197, 1202 (Okla. 1985); Davis v. Davis, supra, note 3 at 1110.
Although the same statute also provides that a parent, guardian or other legal custodian shall have the right to counsel at such proceedings, the right to court-appointed counsel is expressly predicated upon financial need. Matter of Christopher W., supra; Matter of Delaney, 617 P.2d 886, 890 (Okla. 1980); Matter of Rich, 604 P.2d 1248, 1253 (Okla. 1979). The next step, and the one mandated both by the Oklahoma Constitution and statute, in providing compliance with the law at the time of termination is the right to trial by jury.
[7] Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, 519 (1978); Cleveland Bd. of Educ. v. La Fleur, 414 U.S. 632, 639, 94 S.Ct. 791, 796, 39 L.Ed.2d 52, 60 (1974); Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15, 24 (1972); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 559 (1972); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652 (1944); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923); Matter of J.N.M., 655 P.2d 1032, 1035 (Okla. 1982); In re T.H.L., 636 P.2d 330, 335 (Okla. 1981); Matter of Sherol, A.S., 581 P.2d 884, 887 (Okla. 1987); Matter of Chad S., 580 P.2d 983, 985 (Okla. 1978); Davis v. Davis, see note 3, supra.
[8] Cate v. Archon Oil Co., 695 P.2d 1352, 1356 (Okla. 1985); Vanderpool v. State, 672 P.2d 1153, 1157 (Okla. 1983); Snethen v. Oklahoma State Union of the Farmers Educ. & Coop. Union of Am., 664 P.2d 377, 382 (Okla. 1983).
[9] Wilson v. Foster, 595 P.2d 1329, 1331 (Okla. 1979); Matter of Keyes, 574 P.2d 1026, 1030 (Okla. 1977).
[10] Baum v. Oklahoma City, 190 Okla. 618, 126 P.2d 249, 251 (1942).
[11] Before the 1969 amendment, the Okla. Const. art. 2, § 19, provided:

"The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts shall consist of twelve (12) (persons); but in county courts and courts not of record, a jury shall consist of six (6) persons. This Section shall not be so construed as to prevent limitations being fixed by law upon the right of appeal from judgments of courts not of record in civil cases concerning causes of action involving less than Twenty Dollars ($20.00). In civil cases, and in criminal cases less than felonies, three-fourths (¾) of the whole number of jurors concurring shall have power to render a verdict. In all other cases the entire number of jurors must concur to render a verdict. In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein."
[12] Title 59 O.S.Supp. 1968 §§ 1301-1340.
[13] Maryland Nat'l Ins. Co. v. Dist. Court, 455 P.2d 690, 692 (Okla. 1969).
[14] H. Berman, Law & Revolution: The Formation of the Western Legal Tradition, pp. 36, 168 (Harvard University Press 1983).
[15] Lynn v. Shaw, 620 P.2d 899, 901 (Okla. 1980) citing W. Prosser, Handbook, The Law of Torts, § 124, 875 (4th Ed. 1971) relying on Holdsworth, History of English Law, 430 (2d Ed. 1937).
[16] H. Berman, Law & Revolution: The Formation of the Western Legal Tradition, see note 14, supra.
[17] See Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447, 449-50 (1943); Harrington v. Flanders, 2 Ariz. App. 265, 407 P.2d 946, 947 (1965).
[18] See Title 12 O.S. 1981 § 12; 25 O.S. 1981 § 29.
[19] Boswell v. State, 181 Okl. 435, 74 P.2d 940, 942-43 (1937).
[20] Pawnee County Excise Bd. v. Kurn, 187 Okl. 110, 101 P.2d 614, 617 (1940).
[21] Title 10 O.S. 1981 § 1130, was passed in 1968 and became effective January 13, 1969.
[22] Title 10 O.S. 1981 § 1110, provides:

"In adjudicatory hearings to determine whether a child is delinquent, in need of supervision or deprived, the child informed against, or any person entitled to service of summons, shall have the right to demand a trial by jury, which shall be granted as in other cases, unless waived, or the judge on his own motion may call a jury to try any such case. Such jury shall consist of six (6) persons."
[23] Johnson v. Ward, 541 P.2d 182, 186 (Okla. 1975); Wade v. Brown, 516 P.2d 526, 528 (Okla. 1973).
[24] Title 10 O.S. § 1130 was amended in 1986 to add subsection D providing:

"A parent or guardian of a child may petition the court to terminate the parental rights of a parent or the parents of a child for any of the grounds listed in paragraphs 1 through 5 of this section. A prior finding by a court that a child is delinquent, deprived or in need of supervision shall not be required for the filing of such petition by the parent or guardian."
[25] Title 10 O.S. 1981 § 1101(b), (c), (d).
[26] Title 10 O.S. § 1132.
[27] Two types of hearings are recognized in the juvenile code: adjudicatory and dispositional. 10 O.S. 1981 1101(f), (g). Actions bringing a child before the court must originate with a verified petition (10 O.S. 1981 § 1103) alleging, inter alia, "facts which bring the child within the purview" of the Act. Once a summons is issued (10 O.S. 1981 § 1104(a)), the adjudicatory hearing is held to determine whether the allegations of the petition are supported by the evidence and whether a child should be adjudged a ward of the court (10 O.S. 1981 § 1101(f)). This hearing requires procedures be in conformance with the rules of evidence (10 O.S. 1981 § 1111) except that these hearings are to be private in absence of an order to the contrary.

The dispositional hearing is not held in accordance with rules of evidence in that "all evidence helpful in determining the proper disposition best serving the interest of the child ..." may be admitted. 10 O.S. 1981 § 1115(a).
Termination goes beyond mere "disposition" of an adjudicated child. It results in absolute and permanent termination of all a parent's natural and legal rights to a child. 10 O.S. 1981 § 1132. (All citations are to the Code as of 1981. Although minor revisions have been made by amendment, the provisions remain substantively identical.)
See also, Simms, J. dissenting, J.V. v. State Dept. of Insts., Social & Rehabilitative Servs., 572 P.2d 1283, 1294-95 (Okla. 1977).
[28] Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942); Matter of W.D., 709 P.2d 1037, 1040 (Okla. 1985); Davis v. Davis, see note 3 at 1106, supra; Matter of Christina T., 590 P.2d 189, 191-92 (Okla. 1979); York v. Halley, 534 P.2d 363, 365 (Okla. 1975); In re Wright, 524 P.2d 790, 792 (Okla. 1974); Lone Wolf v. State Dept. of Insts., Social & Rehabilitative Services, 470 P.2d 1014, 1016 (Okla. 1970).
[29] Title 1103(a), (b) requires that a petition alleging a child is "within the purview of the act" conform to certain statutory requirements. Under this section, if a termination of parental rights is desired, it must be stated in the petition and summons. Section 1103 contains the same language as § 1110 for determination of "whether a child is within the purview of the act." Additionally, under § 1130, it is not sufficient for termination that the child be found within the purview of the Act, i.e., delinquent, mistreated or neglected, for parental rights may only be terminated in the presence of specifically delineated circumstances. See also, Justice Simms' dissent to J.V. v. State Dept. of Insts., note 27, supra, for a concise explanation of the procedural steps necessary prior to termination.
[30] The Oklahoma Supreme Court in In re Wright, 524 P.2d 790, 792 (Okla. 1974), quoted with approval, the Supreme Court of the United States in Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 81 L.Ed.2d 551, 553-54 (1972):

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed `essential,' Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, [1045, 29 A.L.R. 1446] (1923), `basic civil rights of man'; Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 [1660] (1942), and `(r)ights,' far more precious ... than property rights,' May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, [1226] (1953). `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, 652, (1944). The integrity of the family unit has found protection in the Due Process Clause of The Fourteenth Amendment, Meyer v. Nebraska, supra, 262 U.S. at 399, 435 S.Ct. [625] at 626, [67 L.Ed. at 1045], the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra, at 316 U.S. 541, 62 S.Ct. [1110] at 1113, [86 L.Ed. at 1660] and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678 [1688], 14 L.Ed.2d 510, 522 (1965) (Goldberg, J., concurring.)"
[31] In re Pulliam, 369 P.2d 646, 649 (Okla. 1962); In re Davis, 206 Okl. 405, 406, 244 P.2d 555, 557 (1952).
[32] Seymour v. Swart, 695 P.2d 509, 511 (Okla. 1985); Rothweiler v. Superior Court of Pima County, 100 Ariz. 37, 410 P.2d 479, 485, 16 A.L.R.3d 1362. 1370 (1966); Application of Banschbach, 133 Mont. 312, 323 P.2d 1112, 1114 (1958) (where right to jury trial exists and court determines the facts without jury, it exceeds its jurisdiction).
[1] See footnote 8 infra for the pertinent text of Art. 2 § 19, Okl.Const.
[2] The court recedes today from its earlier view that the 1968 amendment to Art. 2 § 19, Okl. Const., does not provide a mandate for a right to jury trial in termination proceedings. See, J.V. v. State Dept. of Institutions, etc., Okl., 572 P.2d 1282 [1978] and Wilson v. Foster, Okl., 595 P.2d 1329, 1332 [1979].
[3] See footnotes 22 and 23 infra for the pertinent text of Art. 5 §§ 46 and 59, Okl.Const.
[4] See Duncan v. State of Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 [1968] (pertaining to state criminal actions) and Bloom v. State of Illinois, 391 U.S. 194, 200, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 [1968].
[5] Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 [1966].
[6] See Pearson v. Yewdall, 95 U.S. 294, 24 L.Ed. 436 [1877]; Maryland National Insurance Co. v. District Court, Okl., 455 P.2d 690, 692 [1969] and Harada v. Burns, 50 Hawaii 528, 50 Hawaii 588, 445 P.2d 376, 380 [1968].
[7] 403 U.S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647 [1971]. The pronouncements in Duncan v. State of Louisiana, supra note 4, and Bloom v. State of Illinois, supra note 4, were not extended to state noncriminal (delinquency) proceedings against underage persons accused of a violation that would constitute a criminal offense if it were committed by an adult. See McKeiver v. Pennsylvania, supra. In Wilson v. Foster, supra note 2, we opined that the rationale of McKeiver, a delinquency case, applied with even greater force to deprived-status cases.
[8] The pertinent terms of Art. 2 § 19, Okl.Const., provide:

"The right of trial by jury shall be and remain inviolate. ... Juries for the trial of civil and criminal cases shall consist of twelve (12) persons; but in the trial of ... juvenile proceedings . .. juries shall consist of six (6) persons... ." [Emphasis added.]
[9] See Tull v. United States, 481 U.S. ___, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 [1987]. There the Court preserved the right to trial by jury in a case held to be analogous to a common-law action in which the right was afforded. The pertinent part of the Seventh Amendment provides as follows:

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..."
[10] Maryland National Insurance Co. v. District Court, supra note 6 at 692, and Hamil v. Walker, Okl., 604 P.2d 377, 378 [1979].
[11] See footnote 8 supra for the pertinent text of Art 2 § 19, Okl.Const.
[12] The history of the juvenile justice system evolved simultaneously with the child welfare system. Prior to the 19th century, the same institutions handled both adults and children who committed crimes. Children who received inadequate care from their families were assisted by local communities and churches as charity cases. Poverty and crime were treated separately before the rise of a governmental welfare system. The emergence of the child welfare system was seen in various innovative trends in the 19th century such as (a) "shelters" for dependent, neglected, or abandoned children, (b) "houses of refuge" established in early 1825 for children who were convicted of criminal offenses or admitted as vagrants and (c) the establishment of a juvenile court by Illinois in 1899. The latter marked the first implementation of a separate judicial framework whose sole concern was directed to problems and misconduct of youth. The juvenile court marked a conceptual change in the nature of the child's conduct, the child's responsibility for its conduct and the state's role in dealing with that conduct. The state's relationship to the child was based on the old English concept of parens patriae which was central to the juvenile court concept. See, H. Lou, Juvenile Courts in the United States, 13-19 [1927]; Mennel, Origins of the Juvenile Court: Changing Perspectives on the Legal Rights of Juvenile Delinquents, 18 Crime & Delinq. 68 [1972]; Davis, Rights of Juveniles: The Juvenile Justice System, § 1.1 [2nd Ed. 1987]; see generally, Fox, Juvenile Justice Reform: An Historical Perspective, 22 Stan.L.Rev. 1187 [1970], Besharov, Juvenile Justice Advocacy, § 1.1, pg. 1-3 [1974]; Bailey and Rothblatt, Handling Juvenile Delinquency Cases, §§ 1:2-1:5 [1982]; Rubin, Juvenile Justice: Policy, Practice and Law, pgs. 35-38 [2nd ed. 1985]; ALI/ABA, Law and Tactics in Juvenile Cases, § 1.1 [1977] and IJA-ABA Joint Commission on Juvenile Justice Standards: A Summary and Analysis, Part III: The Historical Development of the Juvenile Justice System, §§ 3.1-3.2, pgs. 29-38 [1982].
[13] See Dobson, The Juvenile Court and Parental Rights, 4 Fam.L.Q. 393-394 [1970].
[14] See 10 O.S. 1981 § 9 and 10 O.S.Supp. 1986 § 60.6. Juvenile Code provisions may be found at 10 O.S. 1981 §§ 1101 et seq.
[15] Gordon, Terminal Placements of Children and Permanent Termination of Parental Rights: The New York Permanent Neglect Statute, 46 St. John's L.Rev. 215, 219-244 [1971].
[16] See footnote 12 supra for a discussion of the early 19th century reform efforts directed toward the protection of wayward children (orphans, paupers and juveniles convicted of offenses in criminal courts).
[17] See Baxstrom v. Herold, infra note 20, and Humphrey v. Cady, infra note 21.
[18] See Baxstrom v. Herold, infra note 20, and Humphrey v. Cady, infra note 21.
[19] See Lewis v. United States, 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 [1980]; Barnes v. Superior Court, 186 Cal. App.3d 969, 231 Cal. Rptr. 158, 162 [1986]; and Hickey v. Morris, 722 F.2d 543, 546 [9th Cir.1984].
[20] 383 U.S. 107, 110-113, 86 S.Ct. 760, 762-763, 15 L.Ed.2d 620 [1966]; for a discussion of Baxstrom, supra, see Jackson v. Indiana, 406 U.S. 715, 723-724, 92 S.Ct. 1845, 1851, 32 L.Ed.2d 435 [1972] and United States ex rel. Murray v. Owens, 465 F.2d 289, 293-294 [2nd Cir.1972].
[21] 405 U.S. 504, 508-513, 92 S.Ct. 1048, 1053-1054, 31 L.Ed.2d 394 [1972].
[22] The terms of Art. 5 § 46, Okl.Const., provide in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
* * * * * *
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ..." [Emphasis mine].
[23] The terms of Art. 5 § 59, Okl.Const., provide:

"Laws of a general nature shall have a uniform form operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."