OSCN Found Document:IN THE MATTER OF FB, BHUIYAN v STATE OF OKLAHOMA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF FB, BHUIYAN v STATE OF OKLAHOMA
2025 OK 25
Case Number: 121659
Decided: 04/15/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 25, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF F.B., Alleged deprived child,
GLENDA BHUIYAN, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

OPINION

¶0 Mother's parental rights were terminated after a nonjury trial at which she failed to appear. Mother appealed and the Court of Civil Appeals, Division III, affirmed. We granted certiorari, vacate the Court of Civil Appeals opinion, and remand to the trial court.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
CASE REMANDED TO TRIAL COURT

Evan Humphreys, The Law Office of Evan Humphreys, Guymon, Oklahoma, for Appellant Bhuiyan

Kimberly Jantz, Jeffrey Neise, Tulsa County District Attorney Office, Tulsa, Oklahoma, for State of Oklahoma

KUEHN, V.C.J.:

¶1 The State moved to terminate Mother's parental rights, and a jury trial was set. Mother failed to appear for her jury trial. The trial court found that her failure to appear constituted a waiver of jury trial under Title 10A, Section 1-4-502. Over counsel's objection, the trial court held a nonjury trial in accordance with the statute, and Mother's rights were terminated. The Court of Civil Appeals affirmed. Mother claims the statute on which the trial court and COCA relied is unconstitutional. We vacate the COCA opinion. We find that the statute is constitutional, and remand to determine whether the record shows Mother had notice of the waiver provision.

FACTS

¶2 The child was born in August 2019. Initially, both the appellant (Mother) and the child's father shared custody. However, due to Mother's methamphetamine addiction, Child was frequently exposed to domestic violence, creating a chaotic home environment. In May 2022, the then 3-year-old was placed in emergency custody under the Department of Human Services (DHS). Although Mother entered an inpatient treatment program, she left shortly after and reunited with Father. As a result, the State filed a petition to have the child adjudicated as deprived. Mother agreed to the petition, and on June 30, 2022, the court officially determined the child to be deprived.

¶3 Mother was accepted into the Tulsa County Family Court Treatment Program (FTC) in August 2022. Her Individualized Service Plan, with the conditions she must correct to regain custody of Child, was adopted by the trial court. As the trial court observed, Mother has entered inpatient treatment at least six times since the case began. However, in each instance, she stayed only a few days, never exceeding two weeks. The record indicates that several of these short stays occurred around court dates that Mother missed. She often sought inpatient rehabilitation just before a court date but left the facility once the date had passed. Additionally, she frequently missed the weekly Family Treatment Court (FTC) check-ins, failed to complete urinalysis tests, and consistently failed to comply with her treatment program. As a result of her noncompliance, Mother was discharged from the FTC in January 2023.

¶4 The State filed a motion to terminate Mother's parental rights on April 19, 2023, alleging she failed to correct the conditions that had resulted in Child's deprived adjudication. A jury trial was set for August 28, 2023, but Mother failed to appear. Her attorney told the trial court she had been admitted for inpatient treatment two days before, and asked for a continuance of the jury trial. However, Mother's DHS caseworker testified that the week before the trial, during visitation with Child, Mother said she planned to check herself into an inpatient treatment center in a "last ditch effort" to postpone the trial. [8/28/23 Hearing at 27].

¶5 The trial court found that, according to statute, by failing to appear Mother had waived her right to jury trial, and converted the proceeding to a nonjury trial over her attorney's objections. The trial court terminated Mother's parental rights, finding she had failed to correct the conditions causing Child to be deprived and that termination was in Child's best interests. Mother appealed, and COCA affirmed.

STANDARD OF REVIEW

¶6 Mother claims the trial court's finding that she waived her jury trial violated her right to due process. We review this claim de novo. In the Matter of A.M. & R.W., 2000 OK 8213 P.3d 484In the Matter of E.J.T., 2024 OK 14544 P.3d 950

ANALYSIS

Mother Has a Constitutional Right to a Jury Trial 

¶7 A parent has a constitutionally protected fundamental liberty interest in the bond with a child. A.M. & R.W., 2000 OK 82Santosky v. Kramer, 455 U.S. 745, 753-54 (1982). Parental rights "must be strenuously protected" by ensuring a parent's fundamental due process rights are preserved when the State seeks to destroy that bond. In the Matter of the Adoption of L.B.L., 2023 OK 48529 P.3d 175

¶8 In 1969, the Oklahoma Constitution was amended to provide for a right to jury trial in juvenile proceedings. Okla. Const. art. 2, § 19. Interpreting this language, this Court determined in 1987 that parents have a constitutional right to jury trial in proceedings to terminate parental rights. A.E. v. State, 1987 OK 76743 P.2d 1041Id. at ¶ 20, 743 P.2d at 1047 (footnote omitted). Given the importance of the right at stake, we found it could only be surrendered by consent or waiver. Id. at ¶ 22, 743 P.2d at 1048.

¶9 The Legislature subsequently codified this right to jury trial in Title 10A, Section 1-4-502. Initially, the statute merely afforded parents the opportunity to demand a jury trial. By 2011, the statute provided: "A party who requests a jury trial and fails to appear for such trial, after proper notice and without good cause, may be deemed by the court to have waived the right to be present at such trial." See, e.g., 10A O.S.2011 § 1-4-502 This Court interpreted this language in In the Matter of H.M.W., 2013 OK 44304 P.3d 738in absentia, the trial court denied the request, and his rights were terminated in a nonjury trial. Id. at ¶ 1, 304 P.3d at 739-40. This Court concluded that the entire statutory scheme read together preserved Father's right to a jury trial; where a parent requested a jury trial, and counsel was present and specifically asked for a jury trial in absentia, failure to appear did not constitute waiver of a right to jury trial. Id. at ¶¶ 6-7, 304 P.3d at 740-41. Our analysis focused on the phrase providing that a failure to appear signified waiver of the right to be present. Because policy and precedent clearly protected a parent's right to a jury trial, we strictly construed the legislation in favor of the right. Id. at ¶ 13, 304 P.3d at 741.

¶10 Subsequently the Legislature amended Section 1-4-502 to specifically address the consequences of a parent's failure to appear for jury trial in cases terminating parental rights. The relevant section now reads:

A party who requests a jury trial and fails to appear in person for such trial, after proper notice and without good cause, may be deemed by the court to have waived the right to such jury trial, and the termination of parental rights shall be by nonjury trial unless another party demands a jury trial or the court determines on its own motion to try the case to a jury.

10A O.S. § 1-4-502

¶11 Although Mother argues that these clauses essentially say the same thing, they do not. H.M.W. found that the phrase "right to be present" meant that, where counsel requested it, a litigant was entitled to a trial in absentia. H.M.W., 2013 OK 44shall be by nonjury trial. While the amendment leaves open the possibility that a trial court may conduct a jury trial despite the failure to appear, the new language leaves no room for a trial in absentia.

The Statutory Waiver Provision is Constitutional

¶12 Mother argues that this statutory provision -- authorizing a finding that she waived her right to jury trial by failing to appear -- violates her right to due process. COCA did not substantively address this constitutional claim.

¶13 The right to jury trial may be waived. In the Matter of J.L.O., 2018 OK 77428 P.3d 881 A.E. v. State, 1987 OK 76743 P.2d 1041Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Waiver of a constitutional right such as the right to jury trial must be voluntary, knowing and intelligent, "with sufficient awareness of the relevant circumstances and likely consequences." United States v. Ruiz, 536 U.S. 622, 629 (2002) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)); see also J.L.O., 2018 OK 77

¶14 We must interpret every statute to give effect to the legislative intent and purpose expressed in its language. Magnum Energy Inc. v. Bd. Of Adjustment for City of Norman, 2022 OK 26510 P.3d 818

¶15 But Section 1-4-502(B) does not mandate waiver of the right to jury trial. Rather, it allows a trial court to determine (a) whether a failure to appear constitutes such a waiver, and (b) whether even in the face of that finding, a jury trial should be held. 10A O.S. § 1-4-502

¶16 We presume a statute is constitutional "unless it is clearly, palpably and plainly inconsistent with the Constitution." Hill v. American Medical Response, 2018 OK 57423 P.3d 1119Lee v. Bueno, 2016 OK 97381 P.3d 736Frank Bartel Transportation v. State ex rel. Murray State College, 2023 OK 121

¶17 We must interpret Section 1-4-502(B) in this light. By authorizing the trial court to determine whether a parent's failure to appear waives her right to jury trial, the Legislature implicitly intended to preserve parents' right to due process inherent in that determination. Specifically, we must assume that the Legislature intended for parents affected by this provision to receive prior notice of the possibility of waiving their right to a jury trial. Although the Legislature did not provide specific language outlining how this due process right should be upheld, it is clear that a trial court cannot determine that a parent has waived their right to a jury trial due to failure to appear unless the parent was aware that their absence could result in that consequence. The Legislature intended for parents to be notified in advance of the potential waiver of their right to a jury trial. While the specifics are not outlined, it is clear that a trial court cannot find a waiver without ensuring the parent was aware their absence could result in it.

Mother was Entitled to Notice 

¶18 The record filed in this Court is silent on whether Mother had notice of the possible consequences of her failure to appear for her jury trial. She may not have; she may have been informed at one of the numerous hearings preceding the trial date. We remand the case for an evidentiary hearing in which the trial court shall determine whether Mother received the explanation due to her, which could have informed her decision to fail to appear for trial. Within thirty (30) days, the trial court shall hold the hearing and make this determination; the court shall subsequently file findings of fact and conclusions of law in this Court within fifteen (15) days of the hearing.

Conclusion

¶19 When the State seeks to terminate parental rights, the parent has a right to a jury trial. That right may be waived. To protect the affected children and provide timely and expeditious resolution of these cases, the Legislature has provided that, should a parent request a jury trial and fail to appear for it, the trial court may deem that failure to appear to be a waiver of the right to jury trial; if no other party requests a jury trial and the trial court does not find one should occur, the trial court must proceed with a nonjury trial. We find this statutory provision constitutional. However, due process requires that the record must reflect the parent received notice of the possible consequences of her failure to appear.

¶20 The record before this Court is silent as to whether Mother received notice. The case is remanded for an evidentiary hearing, to be held within 30 (thirty) days of this Opinion, as to whether Mother received sufficient notice to preserve her right to due process. The trial court shall submit findings of fact and conclusions of law to this Court within fifteen (15) days after the hearing. Upon receipt of the trial court's findings and conclusions, this Court will resolve the appeal.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
CASE REMANDED TO TRIAL COURT

CONCUR: ROWE, C.J., KUEHN, V.C.J., and WINCHESTER, EDMONDSON, GURICH and KANE, JJ.

CONCUR IN PART and DISSENT IN PART: Darby, J.

DISSENT: COMBS, J.

COMBS, J., dissenting:

¶1 Although I agree with the majority's conclusion that "a trial court cannot find a waiver without ensuring the parent was aware their absence could result in it" and "cannot determine that a parent has waived their right to a jury trial due to failure to appear unless the parent was aware that their absence could result in that consequence," Majority Op. ¶ 17, I disagree with the majority's determination that section 1 4 502(B) of the Oklahoma Children's code is constitutional, see id. ¶ 19. Section 1-4-502(B) allows a parent to "be deemed by the court to have waived the right to [a] jury trial" just because they knew the date of such jury trial and failed to show up; it does not require any inquiry into whether the parent knew the consequence of failing to show up. In other words, without evidence regarding the voluntary, knowing, and intelligent nature of an actual waiver by the parent, the trial court can merely "deem"

FOOTNOTES

Black's Law Dictionary defines the term "deem" as "[t]o treat (something) as if (1) it were really something else, or (2) it has qualities that it doesn't have <although the document was not in fact signed until April 21, it explicitly states that it must be deemed to have been signed on April 14>." Deem, Black's Law Dictionary 425 (7th ed. 1999).